Slip Op. 21-113

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PROSPERITY TIEH ENTERPRISE CO., LTD.,** | |
| Plaintiff, | |
| and | |
| **YIEH PHUI ENTERPRISE CO., LTD,** | |
| Plaintiff, | |
| v. | Before: Timothy C. Stanceu, Judge |
| **UNITED STATES,** | Consol. Court No. 16-00138 |
| Defendant, | |
| and | |
| **AK STEEL CORP., NUCOR CORP., STEEL DYNAMICS, INC., CALIFORNIA STEEL INDUSTRIES, INC., ARCELORMITTAL USA LLC, and UNITED STATES STEEL CORP.,** | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Ordering an agency redetermination in an antidumping duty investigation, in compliance with a mandate of the United States Court of Appeals for the Federal Circuit.]

Dated: September 1, 2021

*Donald B. Cameron*, *Julie C. Mendoza*, *R. Will Planert*, *Brady W. Mills*, *Eugene Degnan*, and *Mary S. Hodgins*, Morris, Manning & Martin LLP, of Washington, D.C., for plaintiff Prosperity Tieh Enterprise Co., Ltd.

*Kelly A. Slater*, *Jay Y. Nee*, and *Edmund W. Sim*, Appleton Luff Pte. Ltd., of Washington, D.C., for plaintiff Yieh Phui Enterprise Co., Ltd.

*Elizabeth A. Speck*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director. Of counsel was *Michael T. Gagain*, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

*Stephen A. Jones* and *Daniel L. Schneiderman*, King & Spalding, LLP, of Washington, D.C., for defendant-intervenor AK Steel Corp.

*Alan H. Price* and *Timothy C. Brightbill*, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor Corp.

*Roger B. Schagrin*, Schagrin Associates, of Washington, D.C., for defendant-intervenors Steel Dynamics, Inc. and California Steel Industries, Inc.

*John M. Herrmann, II*, Kelley Drye & Warren, LLP, of Washington, D.C., for defendant-intervenor ArcelorMittal USA LLC.

*Thomas M. Beline* and *Sarah E. Shulman*, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for defendant-intervenor United States Steel Corp.

Stanceu, Judge: Before the court is the mandate issued by the United States Court of Appeals for the Federal Circuit ("Court of Appeals") in *Prosperity Tieh Enter. Co. v. United States*, 965 F.3d 1320 (Fed. Cir. 2020) ("*Prosperity III*"). CAFC Mandate in Appeal # 19-1400 (Sept. 8, 2020), ECF No. 132 ("CAFC Mandate"). *Prosperity III* vacated the judgment entered by the court in *Prosperity Tieh Enter. Co. v. United States*, 42 CIT __, 358 F. Supp. 3d 1363 (2018) ("*Prosperity II*"), and remanded "for further proceedings consistent with this opinion," 965 F.3d at 1328. The court issues this Opinion and Order

to explain how it will comply with that mandate and to order the further proceedings consistent with the opinion of the Court of Appeals that are required to resolve the remaining issues in this litigation.

## I. BACKGROUND

Background of this litigation is described in the prior opinions of this Court and the opinion of the Court of Appeals and is summarized briefly herein. *See Prosperity Tieh Enter. Co. v. United States*, 42 CIT __, __, 284 F. Supp. 3d 1364, 1366–68 (2018) ("*Prosperity I*"); *Prosperity II*, 42 CIT at __, 358 F. Supp. 3d at 1365–66; *Prosperity III*, 965 F.3d at 1322–26.

### A. Contested Decisions in the Final and Amended Final Less-than-Fair-Value Determinations

In this litigation, plaintiffs Prosperity Tieh Enterprise Co., Ltd. ("Prosperity") and Yieh Phui Enterprise Co., Ltd. ("Yieh Phui"), each a Taiwanese producer and exporter of certain corrosion-resistant steel products ("CORE"), contested aspects of a final affirmative less-than-fair-value determination of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department"). The contested decision was published as *Certain Corrosion-Resistant Steel Products From India, Italy, the People's Republic of China, the Republic of Korea and Taiwan: Amended Final Affirmative Antidumping Determination for India and Taiwan, and Antidumping Duty Orders*, 81 Fed. Reg. 48,390 (Int'l Trade Admin. July 25, 2016) (P.R. Doc. 390) ("*Am. Final*

*Determination*").[1] The Amended Final Determination modified the Department's decision in *Certain Corrosion-Resistant Steel Products From Taiwan: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 81 Fed. Reg. 35,313 (Int'l Trade Admin. June 2, 2016) (P.R. Doc. 389) ("*Final Determination*"); *see also Issues and Decision Memorandum for the Final Determination in the Antidumping Duty Investigation of Certain Corrosion-Resistant Steel Products from Taiwan* (May 26, 2016) (P.R. Doc. 372) ("*Final Decision Mem.*"). The period of investigation was April 1, 2014 through March 31, 2015. *Final Determination*, 81 Fed. Reg. at 35,313.

Early in its investigation, Commerce identified Yieh Phui and Prosperity as the "mandatory" respondents, i.e., the exporter/producers selected by Commerce for individual investigation and the determination of individual estimated weighted-average dumping margins. *Selection of Respondents for the Antidumping Duty Investigation on Certain Corrosion–Resistant Steel Products from Taiwan* 4 (July 20, 2015) (P.R. Doc. 62). In its preliminary less-than-fair-value determination, Commerce treated as a single entity ("collapsed") Yieh Phui and an affiliate, Synn Industrial Co., Ltd. ("Synn"). *Decision Memorandum for the Preliminary Determination in the Antidumping Duty Investigation of Certain Corrosion-Resistant Steel Products from Taiwan* 4 (Dec. 21,

---

[1] All citations to the administrative records are to public versions. References cited as "P.R. Doc. __" are to documents that were on the record of the proceeding at issue in *Prosperity Tieh Enter. Co. v. United States*, 42 CIT __, 284 F. Supp. 3d 1364 (2018), while references cited as "Remand P.R. Doc. __" are to documents placed on the agency record during Commerce's redetermination proceedings.

2015) (P.R. Docs. 262–263).  Commerce preliminarily determined zero margins for Prosperity and for the combined Yieh Phui/Synn entity and, accordingly, preliminarily reached a negative less-than-fair-value determination, i.e., a preliminary determination that CORE from Taiwan was not being, and is not likely to be, sold in the United States at less than fair value.  *Corrosion-Resistant Steel Products from Taiwan: Negative Preliminary Determination of Sales at Less than Fair Value*, 81 Fed. Reg. 72 (Int'l Trade Admin. Jan. 4, 2016).

In the Final Determination, Commerce determined that CORE from Taiwan was being, or was likely to be, sold in the United States at less than fair value.  *Final Determination*, 81 Fed. Reg. at 35,313.  In reaching that determination, Commerce stated that "[w]e continue to find that YP [Yieh Phui] and Synn are affiliated pursuant to section 771(33)(E) of the Act [19 U.S.C. § 1677(33)(E)] and should be collapsed together and treated as a single company, pursuant to the criteria laid out in 19 CFR 351.401(f)." *Id*. at 35,314 (footnote omitted).  "Additionally, for these final results, we have determined that PT [Prosperity] is also affiliated with Synn, pursuant to section 771(33)(E) of the Act and the three companies should be collapsed together and treated as a single company (collectively, 'PT/YP/Synn'), pursuant to the criteria laid out in 19 CFR 351.401(f)." *Id*. (footnotes omitted).

For the Final Determination, Commerce determined that Prosperity misreported the yield strength of certain of its sales of CORE and, invoking its authority under

19 U.S.C. § 1677e, applied "facts otherwise available" and an "adverse inference" to the costs of the sales it found to be misreported. *Final Decision Mem.* 11–19; *Final Determination*, 81 Fed. Reg. at 35,314.

In the Final Determination, Commerce assigned to the combined Prosperity/Yieh Phui/Synn entity, which now was the only individually-investigated respondent, a weighted-average dumping margin of 3.77%. *Final Determination*, 81 Fed. Reg. at 35,313. Commerce assigned this 3.77% rate to the exporter/producers it did not individually examine (the "all-others" rate). *Id*.

After addressing a ministerial error allegation, Commerce issued an amended final less-than-fair-value determination that increased the margin for the Prosperity/Yieh Phui/Synn combined entity, and the all-others rate, to 10.34%. *Am. Final Determination*, 81 Fed. Reg. at 48,393.

### B. This Court's Decisions in *Prosperity I*

Before this Court, Prosperity and Yieh Phui challenged: (1) a decision by Commerce to refuse to make downward adjustments in the home market sales prices of Yieh Phui and Synn that would account for certain rebates granted to the home market customers of these companies; (2) the Department's decision to collapse Prosperity with the Yieh Phui/Synn entity; and (3) the Department's use of facts otherwise available with an adverse inference in response to Prosperity's reporting of yield strength.

In *Prosperity I*, the court ruled that Commerce erred in refusing to make the downward adjustments to the home market sales prices of Yieh Phui and Synn and ordered Commerce to correct this error. 42 CIT at __, 284 F. Supp. 3d at 1373.

Concluding that the Department's decision to collapse Prosperity with the Yieh Phui/Synn entity was based on erroneous findings of fact, and in particular relied upon events occurring outside the period of the Department's investigation, the court ordered Commerce to reconsider this collapsing decision and reach a new determination based on findings supported by substantial evidence on the record of the investigation. *Id.* at __, 284 F. Supp. 3d at 1375.

Finally, the court concluded that in its instructions to report minimum specified yield strength for CORE, Commerce "did not define in its questionnaire the meaning of the term 'Minimum specified yield strength' as used in its table of yield strength categories ('codes')." *Id.* at __, 284 F. Supp. 3d at 1379. The court reasoned that the instructions, read as a whole, did not preclude a respondent from using a manufacturer's specification for yield strength and did not state a requirement that only a specification in an industry standard would suffice. *Id*. at __, 284 F. Supp. 3d at 1380 ("Having not requested yield strength information only in the form of yield strength as specified by a standards organization, Commerce was not supported by substantial evidence on the record when it found, per 19 U.S.C. § 1677e(a)(2)(B), that Prosperity failed to provide requested yield strength information."). *Prosperity I* further concluded

that Commerce had erred in finding that Prosperity had failed to cooperate by not acting to the best of its ability to comply with a request for information and, on that basis, using an adverse inference under 19 U.S.C. § 1677e(b).  *Id*. at __, 284 F. Supp. 3d at 1381 ("If Commerce is to take an action adverse to a party for an alleged failure to comply with an information request, it must fulfill its own responsibility to communicate its intent in that request.").  The court reasoned that "[i]n this instance, the possibility that a respondent would not interpret the [Department's] instructions according to the Department's subjective and undisclosed intent was a foreseeable consequence of the way Commerce drafted those instructions."  *Id*. at __, 284 F. Supp. 3d at 1381.

**C. The Department's Remand Decision in Response to *Prosperity I* and Subsequent Proceedings**

In its decision in response to the court's opinion and order in *Prosperity I* (the "Remand Redetermination"), Commerce again determined that it should collapse Prosperity with the Yieh Phui/Synn entity.  *Final Results of Redetermination Pursuant to Ct. Remand* (May 23, 2018), ECF Nos. 86-1 (conf.), 87-1 (public) ("*Remand Redetermination*").  Under protest, Commerce made downward adjustments to the home market sales prices of Yieh Phui and Synn to account for the post-sale rebates granted to the companies' home market customers.  Also under protest, Commerce used Prosperity's reported yield strength data for its CORE production rather than facts otherwise available and an adverse inference.  *Remand Redetermination* 2.  Based on these

changes to the Amended Final Determination, Commerce revised the weighted average dumping margin for the Prosperity/Yieh Phui/Synn entity from 10.34% to 3.66%. *See Prosperity II*, 42 CIT at __, 358 F. Supp. 3d at 1366. In *Prosperity II*, the court sustained the Remand Redetermination.

In *Prosperity III*, the Court of Appeals vacated, in part, the judgment entered by this Court in *Prosperity II*. On September 8, 2020, the Court of Appeals issued the mandate to accompany *Prosperity III*. CAFC Mandate.

## II. Discussion

The court exercises jurisdiction over this case pursuant to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants the court jurisdiction of any civil action commenced under Section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a.[2] The court must "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

The Court of Appeals addressed two issues in *Prosperity III*: (1) whether Commerce engaged in the correct analysis when it found "significant potential for manipulation of price or production" between Prosperity and Synn that would support its "collapsing" decision; and (2) whether substantial evidence supported the

---

[2] All references to the United States Code herein are to the 2012 edition and all citations to the Code of Federal Regulations herein are to the 2016 edition.

Department's determination that Prosperity did not comply with its information requests and misreported its yield strength information. 965 F.3d at 1326, 1328. The Court of Appeals held that Commerce did not engage in a permissible analysis in reaching its decision on collapsing of producers. *Id.* at 1328. The appellate court held, further, that Commerce did not err in invoking its authority to use facts otherwise available with an adverse inference in response to Prosperity's reporting of yield strength. *Id.* Because no party appealed this Court's holding in *Prosperity I* and *Prosperity II* that Commerce was required by its regulations to recognize the downward adjustments to home market prices for rebates, that aspect of the judgment entered in *Prosperity II* was not vacated by the Court of Appeals and, therefore, is now final and binding as to further proceedings in this litigation.

### A. The Department's Collapsing Analysis

In response to *Prosperity I*, the Remand Redetermination found as to Prosperity and Synn that there existed, for purposes of its regulation, 19 C.F.R. § 351.401(f), "a significant potential for manipulation [of price or production] between these two companies based on Prosperity's and Synn's level of common ownership, overlapping management, and intertwining of operations." *Remand Redetermination* 11. Regarding Prosperity and the Yieh Phui/Synn entity, Commerce reasoned that "no party disputes our determination to collapse Yieh Phui and Synn in the *Final Determination*." *Id.* at 12. Commerce summarized its conclusion by stating that "[g]iven our determination to

collapse Prosperity with Synn, and our determination to collapse Yieh Phui with Synn, we find that Prosperity, Yieh Phui, and Synn should be collapsed as a single entity for this Final Redetermination due to the significant potential for manipulation of price or production between the collapsed entities." *Id.*

The Court of Appeals described the issue before it as one of "first impression." *Prosperity III*, 965 F.3d at 1326. The court interprets the *Prosperity III* opinion to address the collapsing issue with both an express holding and more general guidance as to how Commerce must conduct the necessary collapsing analysis in the further proceedings to follow. The court addresses these separately below.

The express holding of *Prosperity III* on the collapsing issue is that Commerce, in applying its collapsing regulation to a situation involving three or more affiliated producers, must apply the criteria in its regulation to the evidence of relationships between all three or more of those producers, even when a previous decision to collapse two of those producers was not contested by any party to the litigation that gave rise to the remand proceeding.[3] 965 F.3d at 1326. While the Department "need not find all of

---

[3] The Department's regulation, 19 C.F.R. § 351.401(f)(2), provides as follows:

(2) Significant potential for manipulation. In identifying a significant potential for the manipulation of price or production, the factors the Secretary may consider include:
    (i) The level of common ownership;
    (ii) The extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and

(continued . . .)

the factors in [§ 351.401(f)(2)] present," Commerce "must consider the totality of the circumstances." *Id.* at 1323 (quoting *U.S. Steel Corp. v. United States*, 40 CIT __, ___, 179 F. Supp. 3d 1114, 1139 (2016); *Zhaoqing New Zhongya Aluminum Co. v. United States*, 39 CIT __, __, 70 F. Supp. 3d 1298, 1304 (2015)). In the particular situation presented by this case, the Court of Appeals instructed that:

> Commerce must consider the "totality of the circumstances" relevant to whether there is "significant potential for manipulation of price or production" by evaluating either: (i) the relationship between each individual entity being considered for collapse (here, Prosperity to Synn, Prosperity to Yieh, and Yieh to Synn) or (ii) the relationship between an individual entity and an already collapsed entity with which it is being considered for further collapsing (here, Prosperity to Yieh/Synn).

*Id.* at 1328. While it might be argued that Commerce, in the Remand Redetermination, evaluated the relationship identified in the second of the two choices because of the previous, uncontested decision to treat Yieh Phui and Synn as a single entity, the Court of Appeals clearly rejected that notion, concluding that "Commerce conducted neither of these inquiries." *Id*. The Court of Appeals viewed as impermissible the Department's deeming an analysis of the relationship between Prosperity and Synn to *be* an analysis of the relationship between Prosperity and the Yieh/Synn entity, regardless of the earlier, uncontested collapsing. In other words, under option (i),

---

(. . . continued)
(iii) Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

Commerce was required to evaluate the specific ties between Prosperity, Yieh, and Synn, and under option (ii), if considering Yieh and Synn to be the same entity, Commerce still was required to examine the ties between Prosperity and *both* parts of the Yieh/Synn entity.

The more general guidance by the Court of Appeals pertained to the purpose underlying what it described as a "totality of the circumstances" inquiry. This inquiry must consider whether the companies considered for collapsing (in this case, all three companies) "could potentially manipulate pricing and production to the entity with the lowest antidumping duty rate." *Id.* at 1327. The Court of Appeals considered this an inquiry as to whether there is significant potential for manipulation of price or production "to circumvent antidumping duties." *Id.* at 1326; *see also id*. at 1323 ("The purpose of collapsing multiple entities into a single entity is to prevent affiliated entities from circumventing antidumping duties by 'channel[ing] production of subject merchandise through the affiliate with the lowest potential dumping margin." (*citing Slater Steels Corp. v. United States*, 27 CIT 1255, 279 F. Supp. 2d 1370, 1376 (2003)). Noting language in the preamble to the promulgation of the Department's regulation, the Court of Appeals emphasized that collapsing requires a "*significant*" potential for manipulation of price or production. *Id*. at 1323–24 (citing *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,345 (Int'l Trade Admin. May 19, 1997)). The opinion of the Court of Appeals indicates a general disapproval of the

Case 1:16-cv-00138-TCS   Document 135   Filed 09/01/21   Page 14 of 17
Consol. Court No. 16-00138                                                                                Page 14

Department's resort to collapsing in instances in which the record evidence of such a potential does not meet this more demanding standard.

In accordance with the opinion of the Court of Appeals in *Prosperity III*, Commerce must make a new decision as to whether or not collapsing should occur, supported by valid findings of fact and adequate explanation, in the second redetermination upon remand ("Second Remand Redetermination") that it must submit to the court in response to this Opinion and Order. In applying option (i) or (ii), it is possible that Commerce, based on the totality of the circumstances and the anti-circumvention purpose of collapsing, now will decide that collapsing should not involve all three companies, or that it should not occur at all. Such a decision will require an additional inquiry.

The court is aware that the collapsing of Yieh Phui with Synn was not contested in this litigation, but the court also is aware that the final selection of a mandatory respondent did not occur until the issuance of the Final Determination. In that determination, Commerce found only one mandatory respondent, which was the Prosperity/Yieh Phui/Synn combined entity. Any change in the collapsing decision reached in the Final Determination necessarily would alter the final decision on mandatory respondent selection. If it is necessary to do so, Commerce must resolve this issue in the Second Remand Redetermination and it must calculate new weighted-average dumping margins, as appropriate.

### B. Reporting of Yield Strength for Prosperity's Merchandise

In *Prosperity III*, the Court of Appeals, reversing a decision of this Court in *Prosperity I*, held that Commerce permissibly found in its original determination that Prosperity failed to comply with the Department's requests for information and misreported yield strength of its CORE sales.

In the initial stages of investigation, Commerce issued a questionnaire and accompanying memorandum to Prosperity inquiring on yield strength information. *Initial Antidumping Duty Questionnaire for Prosperity Tieh Enterprise Co., Ltd.* (Aug. 7, 2015) (P.R. Doc. 97); *Memorandum Regarding Correction to Yield Strength Field of Initial Questionnaire* (Aug. 14, 2015) (P.R. Doc. 102). Commerce determined that Prosperity misreported yield strength of some of its merchandise by using a proprietary standard rather than an industry standard, justifying use of "facts otherwise available" under 19 U.S.C. § 1677e(a)(2). *Final Decision Mem.* 18. Further, Commerce found that Prosperity did not cooperate to the best of its ability in responding to the questionnaire and on that basis used an adverse inference under 19 U.S.C. § 1677e(b). *Id.* at 19. As discussed previously, this Court held in *Prosperity I* that Prosperity's responses to the requests for information were based on a reasonable interpretation of the Department's instructions and, therefore, that the Department's use of facts otherwise available with an adverse inference was improper. 284 F. Supp. 3d. at 1378–81.

Disagreeing with this Court's holding on the issue of yield strength reporting, the Court of Appeals concluded that the several examples in the questionnaire and memorandum "support[] Commerce's finding that Commerce's questionnaire sought yield strength information based on the ASTM industry standard . . . . Substantial evidence also supports Commerce's finding that 'minimum specified yield strength' has a common meaning in the industry, which incorporates ASTM specifications." *Prosperity III*, 965 F.3d at 1328. Further, "[s]ubstantial evidence also supports Commerce's finding that Prosperity failed to provide yield strength information based on the ASTM industry standard." *Id*. The Court of Appeals concluded that the evidence is cited is "adequate to show that Prosperity misreported the yield strength of its sales and did not comply with Commerce's requests for information." *Id*.

The court notes that Prosperity contested the Department's decisions to use facts otherwise available and an adverse inference—decisions that have been sustained upon appeal—but did not contest the substituted information Commerce used in its adverse inference decision. *See* Mot. of Pl. Prosperity Tieh Enterprise Co., Ltd. for J. Upon the Agency R. 25–43 (Dec. 15, 2016), ECF No. 55. Therefore, in accordance with the holding in *Prosperity III*, Commerce, in redetermining a margin for Prosperity, must reinstate its original determinations on these two issues.

### III. CONCLUSION AND ORDER

As discussed above, Commerce must reach a new determination on the collapsing issue presented in this litigation and redetermine margins as required by that decision. Therefore, upon consideration of all papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that Commerce shall submit, in accordance with the instructions herein, a second determination upon remand ("Second Remand Redetermination") that is consistent with the opinion of the Court of Appeals in *Prosperity III*; it is further

**ORDERED** that in the Second Remand Redetermination Commerce, in determining a margin for Prosperity, shall employ the use of facts otherwise available with an adverse inference as to the reporting of yield strength by Prosperity that it used in its final and amended determinations of sales at less than fair value; it is further

**ORDERED** that in the Second Remand Redetermination Commerce shall reach a new determination on whether collapsing is appropriate and, if so, how it should be performed; it is further

**ORDERED** that Commerce, upon deciding the collapsing issue that remains unresolved in this litigation, must make a decision on mandatory respondents and calculate new weighted-average dumping margins, as appropriate; it is further

**ORDERED** that Commerce shall submit its Second Remand Redetermination within 90 days of the date of this Opinion and Order; it is further

**ORDERED** that comments of plaintiffs and defendant-intervenors on the Second Remand Redetermination must be filed with the court no later than 30 days of the filing of the Second Remand Redetermination; and it is further

**ORDERED** that defendant may respond to the aforementioned comments within 15 days from the date on which the last comment is filed.

                                          /s/ Timothy C. Stanceu
                                          Timothy C. Stanceu, Judge

Dated: September 1, 2021
        New York, New York