A-583-856
Remand
Slip Op. 21-113
**Public Version**
E&C/OIII:  BQ/AC

***Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui Enterprise Co., Ltd. v. United States***
**Consol. Court No. 16-00138, Slip Op. 21-113 (CIT September 1, 2021)**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

## I.     SUMMARY

The Department of Commerce (Commerce) prepared these final results of

redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT)

issued on September 1, 2021, for further proceedings consistent with the opinion issued by the

U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Prosperity III*.[1]  In *Prosperity*

*III*, the Federal Circuit vacated and remanded the CIT's judgment in *Prosperity II*[2] sustaining

Commerce's First Redetermination Results[3] for purposes of the final determination in the less-

than-fair-value (LTFV) investigation on certain corrosion resistant steel products (CORE) from

---

[1] *See Prosperity Tieh Enter. Co. v. United States*, 965 F.3d 1320 (Fed. Cir. 2020) (*Prosperity III*), Federal Circuit Mandate in Appeal # 19-1400 (September 8, 2020), ECF. No. 132; *see also Prosperity Tieh Enter. Co. v. United States*, Consol. Ct. No. 16-00138, Slip Op. 21-113 (CIT September 1, 2021) (CIT *Remand Order*).
[2] *See Prosperity Tieh Enter. Co. v. United States*, 358 F. Supp. 3d 1363 (CIT 2018) (*Prosperity II*).
[3] *See Final Results of Redetermination Pursuant to Court Remand*, Consol. Court No. 19-00138; dated May 23, 2018 (First Redetermination Results); *see also Prosperity Tieh Enter. Co. v. United States*, 284 F. Supp. 3d 1364 (CIT 2018) (*Prosperity I*).

Taiwan, covering the period April 1, 2014, to March 31, 2015.[4]  Previously, Commerce issued to interested parties the draft results of redetermination pursuant to court remand.[5]

In its remand order, the CIT ordered Commerce:  (1) to reach a new determination regarding whether the collapsing of Prosperity Tieh Enterprise Co., Ltd. (Prosperity) with the Yieh Phui Enterprise Co., Ltd. (Yieh Phui) and Synn Industrial Co., Ltd. (Synn) single entity (collectively, YP/Synn or the YP/Synn entity) is appropriate, consistent with the Federal Circuit's opinion in *Prosperity III* that the collapsing of Prosperity with the YP/Synn entity solely based on an analysis of the relationship between Prosperity and Synn, without analysis of the relationship between Prosperity and YP or the YP/Synn entity, is unlawful;[6] and (2) to reinstate the use of facts otherwise available with an adverse inference as to the reporting of yield strength in calculating Prosperity's margin (or the component of the margin calculated for the single entity attributable to Prosperity).[7]

As set forth in detail below, consistent with the CIT *Remand Order*, we have:  (1) reconsidered the determination to collapse Prosperity with YP/Synn upon further consideration of the record with respect to the relationship between Prosperity and the Yieh Phui component of the YP/Synn single entity, determined that the record does not provide sufficient information to support collapsing Prosperity with the YP/Synn entity and, as a result, recalculated separate

---

[4] *See Certain Corrosion Resistant Steel Products (CORE) from India, Italy, China, Korea and Taiwan:  Amended Final Affirmative Antidumping Determination for India and Taiwan, and Antidumping Duty Orders*, 81 FR 48390 (July 26, 2016) (*Amended Final Determination*).  While the *Amended Final Determination* changed the weighted-average dumping margins, it did not change the analysis from *Certain Corrosion-Resistant Steel Products from Taiwan:  Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 81 FR 35313 (June 2, 2016) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM) at Comments 1-3.

[5] *See Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui Enterprise Co., Ltd. v. United States Court No. 16-00138, Slip Op. 21-113*:  Draft Results of Redetermination Pursuant to Court Remand, released on November 24, 2021 (Draft Results).

[6] *See* CIT *Remand Order* at 14; *see also Prosperity III*, 965 F.3d at 1328.

[7] *See* CIT *Remand Order* at 16.

margins for Prosperity and YP/Synn; and (2) reinstated the adverse facts available finding for Prosperity's misreported yield strength in the distinct margin calculation for Prosperity.

On November 24, 2021, we released the *Draft Results* to interested parties.  On December 10, 2021, we received timely filed comments from Yieh Phui noting its agreement with the Draft Results.[8]  Also on December 10, 2021, we received timely filed comments from Cleveland-Cliffs Steel Corporation, Cleveland-Cliffs Steel LLC, Nucor Corporation, Steel Dynamics Inc., and U.S. Steel Corporation (collectively, the petitioners), noting their agreement with Commerce's reinstatement of partial adverse facts available to remedy Prosperity's misreported yield strength data and their opposition to Commerce's conclusions with respect to the decision to un-collapse Prosperity and YP/Synn.[9]  On January 7, 2022, the CIT granted a consent motion to extend the deadline for Commerce to file the final remand redetermination.[10]  On January 19, 2022, we notified parties that, due to the complexity of the collapsing issue and arguments submitted, and in consideration of the additional time granted by the CIT, Commerce determined that it is appropriate to provide parties the opportunity to submit rebuttal comment to the substantive comments received on the *Draft Results*.[11]  On January 26, 2022, we received timely filed rebuttal comments from Yieh Phui and Prosperity.[12]  On January 28, 2022, the

---

[8] *See* Yieh Phui's Letter, "Corrosion-Resistant Steel Products from Taiwan; Comments on the Draft Results of Redetermination Pursuant to Court Remand in *Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui Enterprise Co., Ltd. v. United States*, Consol. Ct. No. 16-00138, Slip Op. 21-113 (CIT September 1, 2021)," dated December 10, 2021.

[9] *See* Petitioners' Letter, "Corrosion-Resistant Steel Products from Taiwan:  Comments On Draft Results Of Second Redetermination," dated December 10, 2021 (Petitioners' Comments).

[10] *See Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui Enterprise Co., Ltd. v. United States*, Consol. Ct. No. 16-00138:  Order Granting Motion for Extension of Time (CIT January 7, 2022), ECF No. 153.

[11] *See* Memorandum, "Notification of Opportunity to Submit Rebuttal Comment to Parties' Comments on Draft Results of Redetermination Pursuant to Court Remand," dated January 19, 2022 (Request for Rebuttal Memorandum).

[12] *See* Yieh Phui's Letter, "Corrosion-Resistant Steel Products from Taiwan; Rebuttal Comments on the Second Draft Results of Redetermination Pursuant to Court Remand in *Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui*

petitioners requested an opportunity to submit surrebuttal comments.[13]  On January 31, 2022, we denied the petitioners' request to submit surrebuttal comment.[14]

We provide our final redetermination analysis, materially unchanged from the analysis released in the Draft Results, in Section II.  We address the arguments raised in the petitioners' comments and respondents' rebuttal comments on the Draft Results in Section III.[15]  As a result of our analysis and consideration of the parties' arguments, we have made no changes to the Draft Results.  In light of these determinations, we have calculated an 11.04 percent weighted-average dumping margin for Prosperity,[16] and a 1.20 (*de minimis*) margin for YP/Synn which, if sustained by the Court, will result in the exclusion of entries of subject merchandise produced and exported by the YP/Synn entity from the antidumping duty order.[17]

---

*Enterprise Co., Ltd. v. United States*, Consol. Ct. No. 16-00138, Slip Op. 21-113 (CIT September 1, 2021)," dated January 26, 2022 (Yieh Phui's Rebuttal Comments); *see also* Prosperity's Letter, "Certain Corrosion-Resistant Steel Products from Taiwan, Case No. A-583-856:  Rebuttal Comments Regarding The Draft Remand Second Redetermination," dated January 26, 2022 (Prosperity's Rebuttal Comments).

[13] *See* Petitioners' Letter, "Corrosion-Resistant Steel Products from Taiwan:  Petitioners' Request for Opportunity to Reply," dated January 28, 2022.

[14] *See* Memorandum, "Declining to Permit Surrebuttal Concerning Comments on Draft Results of Redetermination Pursuant to Court Remand," dated January 31, 2022 (citing the prior Request for Rebuttal Memorandum, where we stated that "we will not allow further opportunity for surrebuttal comment.").

[15] Parties did not comment on the Court's finding on the yield strength issue and raised no objection with respect to the reinstatement of an adverse inference to Prosperity's misreported yield strength in the Draft Results.  As such, the discussion of parties' comments in Section III, below, concerns only the collapsing issue.

[16] *See* Memorandum, "Analysis Memorandum for Prosperity Tieh Enterprise Co., Ltd., Final Results of Redetermination Pursuant to Court Remand, *Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui Enterprise Co., Ltd., v. United States*," dated concurrently with these results (Prosperity Final Analysis Memorandum); *see also* Memorandum, "Analysis Memorandum for Prosperity Tieh Enterprise Co., Ltd., Draft Results of Redetermination Pursuant to Court Remand, *Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui Enterprise Co., Ltd., v. United States*," dated November 24, 2021 (Prosperity Draft Analysis Memorandum).

[17] *See* Memorandum, "Analysis Memorandum for the Yieh Phui Enterprise Co., Ltd. and Synn Industrial Co., Ltd. Single Entity, Final Results of Redetermination Pursuant to Court Remand, *Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui Enterprise Co., Ltd., v. United States*," dated concurrently with this final redetermination (YP/Synn Entity Final Analysis Memorandum); *see also* Memorandum, "Analysis Memorandum for the Yieh Phui Enterprise Co., Ltd. and Synn Industrial Co., Ltd. Single Entity, Draft Results of Redetermination Pursuant to Court Remand, *Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui Enterprise Co., Ltd., v. United States*," dated November 24, 2021 (YP/Synn Entity Draft Analysis Memorandum).  If these results are upheld, we will issue producer-exporter specific chain-rate exclusion instructions specifying that shipments of subject merchandise produced by Yieh Phui or Synn and exported by Yieh Phui are excluded from the order.

## II.    FINAL ANALYSIS

### A.    Background

In the *Preliminary Determination*, Commerce collapsed Yieh Phui and Synn, and this determination was not challenged in the underlying investigation and, thus, was sustained in the *Final Determination*.[18]  In the *Final Determination*, Commerce further collapsed Prosperity and Synn.[19]  With regard to Prosperity and Synn, Commerce found that "... given the totality of the circumstances, Prosperity Tieh is affiliated with, and should be collapsed with Synn Industrial and they should be treated as a single entity."[20]  Commerce then found that "{s}ince Prosperity Tieh is collapsed with Synn Industrial, and Yieh Phui is collapsed with Synn Industrial, the potential for manipulation of price and production among the three companies comprising the two collapsed entities, we find that Prosperity Tieh/Synn Industrial and Yieh Phui/Synn Industrial should be collapsed as a single entity for purposes of the final determination in this investigation."[21]

Also, in the *Final Determination*, Commerce determined that Prosperity misreported the yield strength of certain of its sales of CORE, which resulted in Commerce's determination that Prosperity failed to cooperate to the best of its ability.[22]  To determine the costs of the sales found to have been misclassified by Prosperity, Commerce resorted to partial adverse facts

---

[18] *See Certain Corrosion-Resistant Steel Products from Taiwan:  Negative Preliminary Determination of Sales at Less than Fair Value*, 81 FR 72 (January 4, 2016) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM) at 4; *see also Final Determination*, 81 FR at 35314, and accompanying IDM at Comment 3; and Memorandum, "Less Than Fair Value Investigation of Certain Corrosion-Resistant Steel Products from Taiwan:  Final Affiliation and Collapsing Memorandum," dated May 24, 2016 (Final Collapsing Memo) at 7-8.
[19] *See Final Determination*, 81 FR at 35314; *see also* Final Collapsing Memo at 8-9.
[20] *See* Final Collapsing Memo at 8-9.
[21] *Id*. at 9; *see also Final Determination* IDM at Comment 3.
[22] *See Final Determination*, 81 FR at 35314, and accompanying IDM at Comment 1.

available pursuant to sections 776(a)(2)(B) and (D) and 776(b) of the Tariff Act of 1930, as amended (the Act).[23]

Mandatory respondents, Prosperity and Yieh Phui, each a Taiwanese producer and exporter of CORE, challenged aspects of Commerce's final affirmative LTFV determination before the CIT, including Commerce's collapsing decision with respect to Prosperity and the YP/Synn entity and Commerce's use of facts otherwise available with an adverse inference in response to Prosperity's reporting of yield strength. In *Prosperity I*, the CIT ordered Commerce to: (1) reconsider its decision to collapse Prosperity with the YP/Synn entity; and (2) "correct the errors resulting from {Commerce's} unlawful decision to use the facts otherwise available and an adverse inference pertaining to the yield strength classification and coding of Prosperity's home market and U.S. market sales."[24] In its First Remand Redetermination, Commerce: (1) reconsidered the collapsing determination in accordance with the CIT's opinion, but continued to treat Prosperity, Yieh Phui, and Synn as a single-entity, consistent with 19 CFR 351.401(f); and (2) under respectful protest, revised the YP/Prosperity/Synn entity's weighted-average dumping margin by using Prosperity's reported yield strength data rather than facts otherwise available with an adverse inference.[25] In *Prosperity II*, the CIT sustained Commerce's First Remand Redetermination.[26] In *Prosperity III*, the Federal Circuit vacated the CIT's judgment on the collapsing issue in *Prosperity II* by concluding that "Commerce acted contrary to law when it collapsed Prosperity, Yieh {Phui}, and Synn without considering the {19 CFR} 351.401(f) factors as between the relationships of Prosperity and Yieh {Phui} or between Prosperity and

---

[23] *See Final Determination* IDM at Comment 1.

[24] *See Prosperity I*, 284 F. Supp. 3d at 1382.

[25] *See* First Remand Redetermination; *see also Prosperity II*, 358 F. Supp. 3d at 1366.

[26] *See Prosperity II*, 358 F. Supp. 3d at 1367, 1370.

Yieh {Phui}/Synn."[27]  The Federal Circuit held that "Commerce must consider the 'totality of circumstances' between all entities when it evaluates whether, for purposes of collapsing entities, there is significant potential for manipulation of price or production to circumvent antidumping duties."[28]

Regarding Prosperity's yield strength, the Federal Circuit held that the CIT "erred when it reversed Commerce's finding that Prosperity misreported yield strength," and that "{s}ubstantial evidence also supports Commerce's finding that Prosperity failed to provide yield strength information based on the ASTM industry standard."[29]

As noted above, the Federal Circuit remanded to the CIT for further proceedings consistent with its opinion.[30]  On September 1, 2021, the CIT issued its remand order, ordering Commerce to reach a new determination on whether collapsing is appropriate, reinstate the use of facts available with an adverse inference with respect to Prosperity's reporting of yield strength which Commerce used in its final and amended LTFV determinations, and redetermine margins, as appropriate, consistent with *Prosperity III*.[31]

B.  Analysis

1.  **Collapsing**

*Legal and Factual Framework*

Pursuant to 19 CFR 351.401(f), three conditions must be satisfied for Commerce to collapse "two or more affiliated producers" into a "single entity."  First, the companies must be

---

[27] *See Prosperity III*, 965 F.3d at 1326.
[28] *Id*. (citing *Koyo Seiko Co. v. United States*, 516 F. Supp. 2d 1323, 1347 (CIT 2007) (*Koyo Seiko*); *Zhaoqing New Zhongya Aluminum Co. v. United States*, 70 F. Supp. 3d 1298, 1304 (CIT 2015) (*Zhaoqing New Zhongya*); and *Catfish Farmers of America v. United States*, 641 F. Supp. 2d 1362, 1373 (CIT 2009)).
[29] *See Prosperity III*, 965 F.3d at 1328.
[30] *Id*.
[31] *See* CIT *Remand Order* at 17.

"affiliated," as defined by sections 771(33)(A)-(G) of the Act.[32]  Collapsing, however, "requires a finding of more than mere affiliation."[33]  Second, under the regulation, the affiliated producers must have "production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities."[34]  This factor "requires similarity in the products produced, not in the facilities that produce them."[35]  Third, there must be "a significant potential for the manipulation of price or production."[36]  Commerce "may consider" the following "non-exhaustive" list of factors in making this determination:  (1) "{t}he level of common ownership;" (2) "{t}he extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm;" and (3) "{w}hether operations are intertwined," for example, "through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers."[37]  Further, "Commerce need not find all of the factors in the regulation present to find a significant potential for manipulation of price or production."[38]  Instead, "{t}hese factors are considered by Commerce in light of the totality of the circumstances," such that "no one factor is dispositive in determining whether to collapse the producers."[39]

As an initial matter, no party to the litigation leading to this remand proceeding challenged Commerce's determination to collapse Yieh Phui and Synn in the *Final Determination*.  Therefore, this issue is not subject to the CIT's remand order, and Commerce

---

[32] *See* 19 CFR 351.401(f)(1).
[33] *See Antidumping Duties; Countervailing Duties*, 62 FR 27296, 27345 (May 19, 1997) (*Preamble*).
[34] *See* 19 CFR 351.401(f)(1).
[35] *See Viraj Group v. United States*, 476 F.3d 1349, 1356 (Fed. Cir. 2007).
[36] *See* 19 CFR 351.401(f)(1).
[37] *See* 19 CFR 351.401(f)(2)(i)-(iii); *see also Preamble*, 62 FR at 27346.
[38] *See United States Steel Corp. v. United States*, 179 F. Supp. 3d 1114, 1139 (CIT 2016); *see also Preamble*, 62 FR at 27346.
[39] *See Zhaoqing New Zhongya*, 70 F. Supp. 3d at 1304 (internal quotations omitted).

has not revisited its determination to collapse Yieh Phui and Synn.  In addition, Commerce previously determined that Prosperity and Yieh Phui are affiliated pursuant to section 771(33)(A) of the Act, based on a familial relationship, and, pursuant to section 771(33)(F) of the Act, because together they are in a position to control Synn.[40]  No party challenged this affiliation finding, and therefore, Commerce continues to find Prosperity and Yieh Phui are affiliated.

The focus of the collapsing issue in the litigation of this investigation concerns Commerce's determination to collapse Prosperity with the YP/Synn entity based on its analysis and determination to collapse Prosperity with Synn.  In the *Final Determination* and as a result of prior litigation, Commerce's analysis of this issue focused on the relationship between Prosperity and Synn to sustain the determination to collapse the two firms and, as a result, the determination to collapse the Prosperity/Synn and YP/Synn entities into a single Prosperity/YP/Synn entity by way of each mandatory respondent's relationship with Synn.[41]  In *Prosperity III*, the Federal Circuit found unlawful Commerce's determination to collapse Prosperity with YP/Synn based only on its analysis of the relationship between Prosperity and Synn, without analysis of the relationship between Prosperity and Yieh Phui or between Prosperity and the YP/Synn entity (*i.e.*, Commerce failed to analyze the relationship between Prosperity and Yieh Phui in its collapsing of Prosperity, Yieh Phui, and Synn into a single-entity).[42]  The Federal Circuit stated that "{b}y disregarding Prosperity's relationship with Yieh {Phui} and {YP}/Synn, Commerce failed to consider the 'totality of circumstances' relevant to whether Prosperity, Yieh {Phui}, and Synn present a 'significant potential for the manipulation of price or production.'"[43]

---

[40] *See Final Determination*, IDM at 28
[41] *Id*.; *see also First Remand Redetermination* at 7-12; and *Prosperity II*, 358 F. Supp. 3d at 1370.
[42] *See Prosperity III*, 965 F.3d at 1327.
[43] *Id*.

Consistent with the CIT *Remand Order*, we have provided the required analysis below, in reconsidering the collapsing determination and find that the record with respect to the relationship between Prosperity and Yieh Phui does not support that Prosperity should continue to be collapsed with the YP/Synn entity.  Although the Federal Circuit did not address whether the record supports Commerce's determination to collapse Prosperity and Synn, an analysis of the collapsing criteria with respect to both components of the YP/Synn single entity (with the additional analysis of the relationship between Prosperity and Yieh Phui not addressed previously, and the existing analysis of the relationship between Prosperity and Synn) is required, and we maintain our prior position that the record supports Commerce's decision to collapse Prosperity and Synn.  However, because we cannot calculate both a Prosperity/Synn and YP/Synn margin, and based on the Federal Circuit's opinion requiring analysis and evidentiary support to demonstrate a significant potential for manipulation of price or production between Yieh Phui and Prosperity (which the record lacks, as discussed below) to collapse Prosperity with the YP/Synn entity, we have determined that collapsing Prosperity with the YP/Synn entity is not supported by substantial record evidence based on the totality of the circumstances.

*Collapsing Analysis*

As directed by section 771(33)(E) of the Act, any person directly or indirectly owning, controlling, or holding with power to vote, five percent or more of the outstanding voting stock or shares of any organization and such organization are considered affiliated or affiliated persons.  Thus, based on Prosperity's ownership share of Synn during the period of investigation (POI), Prosperity and Synn are affiliated pursuant to section 771(33)(E) of the Act.[44] Additionally, as mentioned above, Commerce previously determined that Prosperity and Yieh

---

[44] *See, e.g.*, Synn's Letter, "Corrosion-Resistant Steel Products from Taiwan:  Section A Response," dated January 13, 2016 at 9.

Phui were affiliated based on a familial relationship and because together they were in a position to control Synn, pursuant to sections 771(33)(A) and (F) of the Act, respectively.[45]  As such, Prosperity was affiliated with both "parts" of the Yieh Phui/Synn entity during the POI, and the first of three collapsing criteria under 19 CFR 351.401(f) is satisfied pursuant to section 771(33)(E) of the Act.

Further, Prosperity, Synn, and Yieh Phui all produced subject merchandise during the POI.[46]  Thus, there was no need for these producers to retool their facilities in order to restructure manufacturing priorities because all of them already produced merchandise that fell within the scope of the order.[47]  They are able to produce similar or identical products, without engaging in any retooling.  Therefore, the second of three collapsing criteria pursuant to 19 CFR 351.401(f)(1) is met.

The third criterion for collapsing under 19 CFR 351.401(f)(2) is that there must be "a significant potential for manipulation of price or production."  Section 351.401(f)(2) of Commerce's regulations directs Commerce to consider:  (1) "{t}he level of common ownership;" (2) "{t}he extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm;" and (3) "{w}hether operations are intertwined," for example, "through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated

---

[45] *See Final Determination* IDM at 27-28.
[46] *See* Prosperity's Letter, "Corrosion-Resistant Steel Products from Taiwan, Case No. A-583-856: Sections B-D Initial Questionnaire Response," dated October 13, 2015 (Prosperity's BCDQR) at D-5 and Exhibit D-2; *see also* Synn's Letter, "Corrosion-Resistant Steel Products from Taiwan: Sections B-D Response," dated February 5, 2016 (Synn's BCDQR) at D-47 and Exhibit D-2; and Yieh Phui's Letter, "Corrosion Resistant Steel Products from Taiwan:  Section D Response," dated October 13, 2015 (Yieh Phui's DQR) at 4 and Exhibit D-2.
[47] *See Amended Final Determination*, 81 FR at 48390-91; *see also Final Determination* IDM at 27-28; Prosperity's BCDQR at D-5 and Exhibit D-2; Synn's BCDQR at D-47 and Exhibit D-2; and Yieh Phui's DQR at 4 and Exhibit D-2.

11

producers."[48]  Although Commerce need not find all three factors present, as the Federal Circuit

instructed in *Prosperity III*, Commerce must consider the totality of the circumstances with

respect to these factors relevant to whether there is "significant potential for manipulation of

price or production."[49]

      Regarding this prong of the collapsing criteria, we find that the record contains

insufficient evidence to form a factual basis that "significant potential for manipulation" exists

between Yieh Phui and Prosperity based on the totality of circumstances.  First, Prosperity and

Yieh Phui do not share any significant common ownership, and there is no overlap in their

largest shareholders.[50]  Second, none of Prosperity or Yieh Phui's managers and directors serve

as managers or directors of the other firm.[51]  Third, the record does not reflect that the operations

of Prosperity and Yieh Phui are intertwined in any way; specifically, the firms do not share sales

information, have no involvement in each other's production and pricing decisions, do not share

facilities or employees, and had no significant transactions with each other.[52]

      The record contains several specific factors which *could* support Commerce's finding of

a "potential for manipulation of price or production" between Prosperity and Yieh Phui,

including:  (1) a familial relationship between Prosperity and Yieh Phui (suggesting common

family control);[53] and (2) the notation in Prosperity's verification report that an "informal

---

[48] *See* 19 CFR 351.401(f)(2)(i)-(iii); *see also Preamble*, 62 FR at 27346.

[49] *See Prosperity III*, 965 F.3d at 1328.

[50] *See* Prosperity's Letter, "Corrosion-Resistant Steel Products from Taiwan, Case No. A-583-856:  Section A Initial Questionnaire Response," dated September 15, 2015 (Prosperity's AQR) at Exhibits A-4 and A-5; *see also* Yieh Phui's Letter, "Corrosion-Resistant Steel Products from Taiwan:  Section A Response," dated September 11, 2015 (Yieh Phui's AQR) at Exhibits A-4 and A-5.

[51] *See* Prosperity's AQR at Exhibits A-4 and A-5; *see also* Yieh Phui's AQR at Exhibits A-4 and A-5.

[52] *See generally* Prosperity's AQR; Prosperity's October 13, 2015 DQR; Yieh Phui's AQR; Yieh Phui's DQR; Memorandum, "Less than Fair Value Investigation of Certain Corrosion-Resistant Steel Products from Taiwan: Verification of the Sales Responses of Prosperity Tieh Enterprise Co., Ltd.," dated April 13, 2016 (Prosperity's Sales Verification Report) at 4-6; and Memorandum, "Verification of the Sales Response of Yieh Phui Enterprise Co., Ltd. in the Antidumping Duty Investigation of Corrosion-Resistant Steel Products from Taiwan," dated April 13, 2016 at 3-5 (Yieh Phui's Sales Verification Report).

[53] *See* Prosperity's AQR at Exhibits A-4 and A-5; *see also* Yieh Phui's AQR at Exhibits A-4 and A-5.

agreement" exists between Prosperity and Yieh Phui which provides that Prosperity and Yieh Phui may each appoint one of Synn's three directors (suggesting informal coordination between respondents).[54] However, the record does not support common family control by a family grouping. Further, the informal agreement noted in the verification report is elsewhere established on record as a formalized agreement, whereby the three largest shareholders in Synn each appoint a representative director to Synn's board.[55] Such an arrangement between the largest shareholders in a company is not extraordinary and we do not consider it, in itself, evidence of potential for manipulation. Ultimately, although these scant pieces of evidence could support *some* potential for manipulation of price or production between Prosperity and Yieh Phui, the collapsing criterion requires a "significant" potential for manipulation of price or production based on the totality of the circumstances which is not present here.[56]

Accordingly, we have determined that there is an insufficient record basis to support a finding, based on the totality of the circumstances, that a significant potential for manipulation of price or production exists between Prosperity and the Yieh Phui portion of the YP/Synn entity. Although we previously determined that the record supports Commerce's determination to collapse Prosperity into the YP/Synn entity, that determination was based solely upon Commerce's analysis of the relationship between Prosperity and Synn, a basis which the Federal Circuit found in error. However, the remand directive requires analysis and a factual basis to support that there exists a significant potential for manipulation between Yieh Phui and Prosperity (based on the totality of circumstances) to sustain collapsing of all three entities.

---

[54] *See* Prosperity's Sales Verification Report at 4-6.
[55] *See* Prosperity's AQR at Exhibit A-41 (Synn's Articles of Association).
[56] *See* 19 CFR 351.401(f)(1), (2); *see also Prosperity III*, 965 F.3d at 1323, 1328 (quoting the *Preamble* that collapsing requires a "significant" potential for manipulation, and that "{t}he suggestion that {Commerce} collapse upon finding *any* potential for price manipulation would lead to collapsing in almost all circumstances in which {Commerce} finds producers to be affiliated. This is neither {Commerce}'s current nor intended practice.").

After reconsideration and review of the record, we find that it lacks such information but, rather, reflects that the two firms had minimal involvement with one another independent of their interest in Synn during the POI.  Thus, pursuant to the totality of circumstances analysis required by the CIT, which now additionally considers that there is insufficient evidence to find a significant potential for manipulation between Prosperity and the Yieh Phui portion of the YP/Synn entity, we determine that Prosperity should be uncollapsed from the YP/Synn single entity.  As a result, for these final results of redetermination, we have calculated separate margins for Prosperity and YP/Synn.[57]  As the margin calculated for the YP/Synn entity is below the *de minimis* threshold, Commerce will exclude entries of subject merchandise produced and exported by YP/Synn from the order should these results be sustained by the CIT.

### 2.  Application of Adverse Facts Available to Prosperity's Yield Strength Reporting

The Federal Circuit held that "a reasonable mind might accept … that Prosperity misreported the yield strength of its sales and did not comply with Commerce's requests for information,"[58] and concluded that substantial evidence supports Commerce's finding that Prosperity failed to provide yield strength information based on the ASTM industry standard as requested.[59]  The Federal Circuit further found that the evidence Commerce cited in support of the application of adverse facts available (AFA) is adequate to show that Prosperity misreported the yield strength of its sales and did not comply with Commerce's requests for information.[60]  As such, in accordance with the CIT *Remand Order*, we have reinstated our original AFA

---

[57] In the CIT *Remand Order*, the Court ordered that Commerce, upon deciding the collapsing issue, make a decision on mandatory respondents and calculate new weighted-average dumping margins, as appropriate.  *See* CIT *Remand Order* at 17.  In the underlying investigation, we selected Prosperity and Yieh Phui as mandatory respondents prior to issuance of the preliminary determination.  *See Preliminary Determination* PDM at 2.  Our selection of mandatory respondents is unchanged by these final results of redetermination pursuant to the Court's order.  Therefore, it is appropriate to calculate individual weighted-average dumping margins for these companies.
[58] *See Prosperity III*, 965 F.3d at 1328.
[59] *Id.*
[60] *Id.*

14

finding with respect to Prosperity consistent with Federal Circuit's opinion in *Prosperity III*.[61]

## III.   DISCUSSION OF PARTIES' COMMENTS

**Comment 1:   Prosperity and YP/Synn Should Continue to Be Collapsed as a Single Entity**

*Petitioners' Comments*[62]

- In the Draft Results, Commerce ignored record evidence of common family ownership and control over both Prosperity and Yieh Phui that warrants collapsing those two companies.[63]
    - Specifically, under Commerce's established practice, a family (including extended family) may be viewed as a "person" for purposes of the affiliation and collapsing analyses.[64]
    - The record reflects that the chairman of Yieh Phui, Mr. Lin, I Shou, and the chairman of Prosperity Tieh, Mr. Kao-Huang Lin, are [                    ].[65]  Further, the record reflects that Prosperity and all of its affiliates are privately held by the Lin family and that [

      ], Mr. Daniel Lin and Ms. Rechelle Lin, managed sales and operations.[66] Likewise, Commerce found that Yieh Phui is a part of a group of businesses controlled by Mr. Lin, I Shou and that this group is owned and controlled by [                                   ] with nearly all of Yieh Phui's top ten shareholders being [                                   ].[67]
    - The Lin family grouping should be treated as a "person" for purposes of the affiliation and collapsing analyses, as the record shows that the Lin family owns [                                   ] both Yieh Phui and Prosperity and controls [                                   ] both companies.[68]
    - Common ownership and overlapping directorship factors under Commerce's collapsing regulation strongly weigh in favor of collapsing.[69]
- Although there is no requirement that Commerce also find intertwined operations under 19 CFR 351.401(f)(2)(iii), Commerce recognized that there existed an arrangement between

---

[61] *See* Prosperity Final Analysis Memorandum; *see also* CIT *Remand Order*; and *Prosperity III*, 965 F.3d at 1328.
[62] *See* Petitioners' Comments at 4-9.
[63] *Id*. at 4-5.
[64] *Id*. (citing *Polyethylene Terephthalate Resin from Indonesia:  Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 83 FR 19691 (May 4, 2018), and accompanying PDM, unchanged in *Polyethylene Terephthalate Resin from Indonesia:  Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part*, 83 FR 48278 (September 24, 2018)) (*PET Resin from Indonesia*); and *Ferro–Union, Inc. v. United States*, 44 F. Supp. 2d 1310, 1325-26 (CIT 1999) (*Ferro-Union*).
[65] *Id*. at 4 (citing, *e.g.*, Prosperity's December 8, 2015, Second Supplemental Sections A-C Response at 10); and *id*. at 6 (citing YP Sales Verification Report at 4).
[66] *Id*. at 5 (citing Prosperity's Sales Verification Report at 4).
[67] *Id*. at 5-6 (citing YP's Sales Verification Report at 2-3; Yieh Phui's AQR at 6 and Exhibits 5 and 6; and YP's December 7, 2015, Supplemental Sections A-C Response at Exhibit 7).
[68] *Id*. at 6.
[69] *Id*. (citing 19 CFR 351.401(f)(2)(i), (ii)).

Prosperity and Yieh Phui by which they would jointly control Synn's board of directors.[70] Though Commerce noted that such an arrangement between the largest shareholders in a company is not extraordinary, concluding that this fact is not, in itself, evidence of potential for manipulation, such a finding is not the point because the arrangement shows an alignment of interests in which Yieh Phui and Prosperity cooperate with respect to their control over Synn to further their collective self-interest, which weighs in favor of the existence of a potential for manipulation and, together with the control by a family person, the totality of circumstances supports sustaining the collapsing finding.[71]

- Nothing in *Prosperity III* undermines Commerce's prior decisions to collapse Yieh Phui with Synn (thereby creating a YP/Synn entity) or to collapse Prosperity with Synn (thereby creating a PT/Synn entity) and, as such, there is no reason why Commerce cannot consider Synn's role in evaluating the potential for manipulation between Yieh Phui and Prosperity.[72] Failure to collapse Prosperity with YP/Synn creates significant potential for manipulation given the highly intertwined operations of Prosperity with Synn, as Commerce explained at length in the original final determination and first redetermination.[73]

  o During a portion of the POI when Synn's galvanizing operations were shut down for revamping, its steel was galvanized by Prosperity under a tolling agreement.[74] As Commerce explained, "this agreement demonstrates that the companies did not just have the capability to shift production from one entity to another but that *they actually did shift production during a significant portion of the POI, which we find to be qualitatively significant.*"[75]

  o Moreover, Synn performed cold-rolling (an upstream process) for Prosperity on a purchase and sale basis, and the companies shared proprietary production information.[76] Such activities were "not market behavior characteristic of competitors" but rather were "indicative of cooperative intertwined operations."[77] Absent collapsing, therefore, Synn and Prosperity can simply shift production to the lower margin producer, which presents a significant potential for manipulation.[78]

  o In evaluating the potential for manipulation between Prosperity and YP/Synn, Commerce should not look to the relationship between Yieh Phui and Prosperity in isolation.[79] Even supposing Yieh Phui and Prosperity do not have operations that are directly intertwined, they are, at the very least, indirectly intertwined (through Synn) in such a way that creates a significant potential for manipulation.[80] Commerce is continuing to treat Yieh Phui and Synn as a single entity, recognizing the potential for manipulation of prices or production whereby, absent collapsing, Yieh Phui and Synn could shift sales and production to the

---

[70] *Id.* at 7 (citing Draft Results at 11).
[71] *Id.*
[72] *Id.* at 8.
[73] *Id.*
[74] *Id.* (citing First Remand Redetermination at 9-10 and 25-26).
[75] *Id.* (citing First Remand Redetermination at 26).
[76] *Id.* (citing First Remand Redetermination at 10-11 and 28-29).
[77] *Id.* (citing First Remand Redetermination at 29).
[78] *Id.*
[79] *Id.*
[80] *Id.* at 9.

lowest-margin producer.[81]   However, the same potential for manipulation exists between Prosperity and Synn and, as an indirect consequence, between Yieh Phui and Prosperity, *i.e.*, because both Yieh Phui and Prosperity can shift production to or from Synn, if Prosperity is not included in the collapsed entity, Synn can be used as a third-party conduit to shift production from Prosperity (subject to the order) to Yieh Phui (excluded from the order).  There remains, therefore, a "significant potential for manipulation" that warrants continued collapsing of all three companies, even under the standard set forth in *Prosperity III*.[82]

*Yieh Phui's Rebuttal Comments* [83]

- Substantial record evidence does not support a finding of a Lin family grouping as a person for the purpose of the affiliation and collapsing analysis.[84]
  - In the Draft Results, Commerce continued to find Prosperity and Yieh Phui are affiliates pursuant to section 771(33)(A) of the Act, based on a familial relationship, and pursuant to section 771(33)(F) of the Act, because together Prosperity and Yieh Phui are in a position to control Synn.[85]   In determining Prosperity and Yieh Phui are affiliates pursuant to section 771(33)(F) of the Act, Commerce has never found, either in the original investigation or in the Draft Redetermination, that Prosperity and Yieh Phui are under the common control of another person.[86]
  - While Commerce has grouped some families together and considered them altogether as a "person" for the purpose of analyzing whether family-owned businesses are affiliated with each other due to common family control by a family grouping, the record evidence in this case does not support such a finding to consider (1) the Kao-Huang Lin family group that owns and controls Prosperity, and (2) the I-Shou Lin family group that owns and controls Yieh Phui, as a person for the affiliation analysis.[87]
  - The CIT held in *Echjay Forgings Private Limited v. United States* that the conclusion that the owners of family businesses are affiliated alone does not support that a family grouping constitutes a "person" that may control multiple companies.[88]   In order to consider a family grouping to be a person capable of collective control, there must be findings that the family grouping shares a common interest or consists of relationships that could impact business decisions of the family owned companies.[89]   In order to assure that the persons involved are family members as contemplated by the affiliation statute, a family grouping analysis requires evaluation of the "nature of the relationship" among the family members.[90]
  - In the instant case, the nature of the relationship between the Kao-Huang Lin family group that owns and controls Prosperity, and the I-Shou Lin family group that owns and

---

[81] *Id.*
[82] *Id.* at 8-9.
[83] *See* Yieh Phui's Rebuttal Comments at 1-11.
[84] *Id.* at 3.
[85] *Id.* at 4.
[86] *Id.* at 4 (citing Draft Results at 7).
[87] *Id.* at 5.
[88] *Id.* (citing *Echjay Forgings Private Limited v. United States*, 475 F. Supp. 3d 1350, 1367-69 (CIT 2020) (*Echjay*)).
[89] *Id.*
[90] *Id.*

controls Yieh Phui, does not warrant a family grouping of these two Lin family groups as contemplated by the Act.[91]  The record evidence indicates that each of the Kao-Huang Lin family group and the I Shou Lin family group has its own affiliated businesses, but that none of these affiliated businesses, except for Synn, are jointly owned or controlled together by these two family groups.[92]  While the I-Shou Lin family group owns and controls Yieh Phui, E United Group, and dozens of other affiliates, none of these highly diversified lines of businesses has the Kao-Huang Lin family group's interests at stake (except for Synn), and *vice versa*.[93]  None of the family members of either of the two Lin family groups operates or manages businesses that are owned or controlled by the other Lin family group.[94]  Even when these two family groups have some business in common such as the manufacturing of CORE, the companies owned and controlled separately by these two Lin family groups, *i.e.*, Prosperity and Yieh Phui, did not have any transactions or coordination of any sorts with each other during the investigation period, as Commerce properly found in the Draft Redetermination.[95]  Furthermore, the record evidence shows that Prosperity and Yieh Phui are in fact competitors in the CORE business.[96]

o  Even though Prosperity and Yieh Phui are both in a position to control Synn, the evidence demonstrates that the acquisition of Synn's shares by Prosperity and Yieh Phui is not an action in concert, coordinated by the two Lin family groups, but rather is the result of separate and individual business decisions of Prosperity and Yieh Phui to invest in an indebted company.[97]  The "informal agreement" between Prosperity and Yieh Phui to each appoint one of Synn's three directors merely reflects a certain management "arrangement between the largest shareholders in a company," and thus, "is not extraordinary," as properly found by Commerce.[98]

o  In sum, the record evidence has demonstrated that the divided, and partition of, family ownership and control of businesses reveals that the two Lin family groups do not operate as a cohesive unit that is required to determine whether there is collective control through a family grouping.[99]  Commerce should reject the petitioners' argument to group the two Lin families together and consider them as a "person" for the purpose of the affiliation or collapsing analysis.[100]

• Substantial record evidence does not support the Lin family grouping to be considered as a person such that it gives rise to a finding of significant potential for manipulation of price or production, and the direct connections between Prosperity and Yieh Phui do not warrant a finding of significant potential of the manipulation.[101]

o  Regarding the common ownership factor of "significant potential for manipulation of price or production," the petitioners' argument should be rejected as unsupported by

---

[91] *Id.*
[92] *Id.* at 6 (citing Yieh Phui's AQR at Exhibit 4; and Prosperity's AQR at Exhibit A-4).
[93] *Id.* (citing Yieh Phui's AQR at Exhibit 4, 6-7; and Prosperity's AQR at Exhibit A-5 through A-7).
[94] *Id.*
[95] *Id.* (citing Draft Results at 10).
[96] *Id.* (citing Yieh Phui's Sales Verification Report at 4).
[97] *Id.* (citing Memorandum, "Verification of the Sales Response of Synn Industrial Co., Ltd. in the Antidumping Duty Investigation of Corrosion-Resistant Steel Products from Taiwan," dated April 13, 2016 (Synn's Sales Verification Report) at 3).
[98] *Id.* (citing *Draft Results* at 11).
[99] *Id.* at 7 (citing *Echjay*, 475 F. Supp. 3d at 1372).
[100] *Id.*
[101] *Id.* at 7-9.

record evidence because the Lin family grouping should not be considered as a "person" both for the affiliation and collapsing analysis.[102]  As explained, the record evidence does not support that the Lin family grouping operates as a cohesive unit.  Instead, the divided, and partition of, family ownership and control of businesses reveals that the two Lin family groups do not exercise collective control through a family grouping.  The CIT has held that even though a family grouping in aggregate owns a majority of the family businesses, a conclusion for significant potential of manipulation requires the "predicate analysis" that the family grouping is "in fact an intact family grouping."[103]  As the petitioners have not pointed to any record evidence or provided a predicate analysis that the Lin family grouping is in fact an intact family grouping, Commerce should reject the petitioners' argument and continue to find that Prosperity and Yieh Phui are not under common ownership.[104]

o   Second, with respect to the common management factor, the petitioners' assertion should also be disregarded as unsupported by record evidence.  The CIT has held that Commerce's regulation on common management has defined the inquiry to require Commerce to compile a list of managers or board members on one firm and compare them to the board of directors on an affiliated firm.[105]  To put it another way, there must be a list of individuals that serve as managers or board members of both Prosperity and Yieh Phui for Commerce to determine that Prosperity and Yieh Phui are under common management for the purpose of collapsing analysis.  However, none of this is found on the record.[106]  Instead, record evidence reveals, as Commerce correctly found, that none of Prosperity or Yieh Phui's managers and directors serve as managers or directors of another firm.[107]  The petitioners' argument, which is based on a misinterpretation of Commerce's collapsing regulation, should thus be rejected.  As such, in the final redetermination, Commerce should continue to find Prosperity and Yieh Phui not under any common management.

o   Third, Commerce has correctly found that there are no intertwined operations between Prosperity and Yieh Phui in any way.[108]  Specifically, the two firms do not share sales information, have no involvement in each other's production and pricing decisions, do not share facilities or employees, and had no significant transactions with each other.[109]  The petitioners claim that the informal agreement between Prosperity and Yieh Phui on the arrangement of Synn's director shows "alignment of interest between Prosperity and Yieh Phui and demonstrates that the companies work together in furtherance of those interests."[110]  However, this sort of agreement does not reflect the type of intertwined operations contemplated by Commerce's regulation that it has to be in relation to Prosperity or Yieh Phui itself on the operations of either firm's CORE business.  While Prosperity and Yieh Phui do not coordinate in any way on their own firms' CORE business, a commercially reasonable arrangement between the largest shareholders on a

---

[102] *Id*. at 8.
[103] *Id*. at 8 (citing *Echjay*, 475 F. Supp. 3d at 1374).
[104] *Id*.
[105] *Id*.
[106] *Id*. at 8-9.
[107] *Id*. at 9 (citing Draft Results at 10).
[108] *Id*.
[109] *Id*. (citing Draft Results at 10).
[110] *Id*. (citing Petitioners' Comments at 7).

third-party investee should not be considered as intertwined operations between Prosperity and Yieh Phui.

- Further, indirect connections between Prosperity and Yieh Phui through Synn do not support collapsing.[111]
  - *Prosperity III* gave Commerce two options in conducting the collapsing analysis in this case:  (i) requiring Commerce to evaluate the specific ties between Prosperity, Yieh Phui, and Synn; or (ii) if considering Yieh Phui and Synn to be the same entity, requiring Commerce to examine the ties between Prosperity and both parts of the YP/Synn entity.[112]  In choosing to frame its Draft Results in the context of the second option, Commerce is required to evaluate the relationship between Prosperity and both parts of the YP/Synn collapsed entity.[113]  In its remand order, the CIT also instructed that the Federal Circuit "viewed as impermissible Commerce's deeming an analysis of the relationship between Prosperity and Synn to be an analysis of the relationship between Prosperity and the Yieh/Synn entity, regardless of the earlier, uncontested collapsing."[114]  Thus, the petitioners' argument which is based on the "highly intertwined operations of Prosperity with Synn" in establishing the potential manipulation between Prosperity and YP/Synn is impermissible under the Federal Circuit's mandate.[115]
  - Commerce should reject this argument as inconsistent with *Prosperity III*.[116]  Moreover, as explained above, the substantial record evidence does not support a collapsing finding between Prosperity and Yieh Phui and this conclusion, as Commerce has made in the Draft Results, is based on the totality of the circumstances relevant to the collapsing of Prosperity and Yieh Phui.  Thus, direct or indirect connections between Prosperity and Yieh Phui, all have been included in Commerce's evaluation in deciding not to collapse Prosperity and Yieh Phui.  Since the petitioners point to no substantial record evidence that supports their position, Commerce should reject the petitioners' argument as unsupported by record evidence.[117]

*Prosperity's Rebuttal Comments*[118]

- Despite numerous opportunities to present comments and arguments over the last six plus years – in the original investigation, the appeal to the CIT, Commerce's first redetermination, and the Federal Circuit appeal, the petitioners never once made arguments they now make as the basis to collapse Prosperity with Yieh Phui or YP/Synn.[119]  These are new arguments made here for the first time.  Regardless, these legal arguments have no merit and should be rejected.[120]
- The petitioners note the familial relationship between the chairman of Yieh Phui and the chairman of Prosperity and claim that this permits that the family may be viewed as a

---

[111] *Id*. at 10.
[112] *Id*. at 2 (citing CIT *Remand Order* at 12-13).
[113] *Id*. at 10.
[114] *Id*. at 10 (citing CIT *Remand Order* at 12).
[115] *Id*. at 10-11.
[116] *Id*. at 11.
[117] *Id*. at 11 (citing Draft Results at 11).
[118] *See* Prosperity's Rebuttal Brief at 1-11.
[119] *Id*. at 2.
[120] *Id*.

"person" for purposes of the affiliation and collapsing analysis.[121]  This argument, however, conflates the issue of whether Prosperity and Yieh Phui are "affiliated," which Commerce found to be supported on the basis of the family relationship, with the issue of whether they also meet the more rigorous standard of collapsing, which Commerce did not find during the investigation.[122]

- The CIT has held that "the potential for manipulation must be significant"[123] and has affirmed Commerce's practice of looking for "relatively unusual situations, where the type and degree of relationship is so significant that {it finds} there is a strong possibility of price manipulation."[124]  The petitioners gloss over the distinctions between facts necessary for a finding of affiliation and collapsing.

- The petitioners' citations to precedent regarding control by the family entity are misleading.[125]  Whereas precedent (such as *PET Resin from Indonesia* and *Ferro-Union* cited by the petitioners) establishes that a family may be viewed as a "person" for purposes of the affiliation and collapsing analyses, the petitioners mischaracterize this principle as standing for the proposition that mere familial relations between two separate entities is sufficient alone to determine that the families constitute a "person" for purposes of finding affiliation and a collapsing determination.  This is not the case.  The fact that there are "familial relations" between two entities does not in itself support a determination that the two entities constitute a single person for purposes of affiliation and collapsing.[126]  Rather, the CIT has held that, in analyzing this issue, "Commerce may not automatically find affiliated family members to be a person under subsection (F) but must instead address the evidence" of the family and company interactions.[127]  Rather, the record must show that the family grouping shares a common interest or consists of relationships that impact business decisions of the family owned companies.[128]  In *Echjay*, record evidence showed that the entities controlled by the various family members did not interfere in, control, or participate in the business of the other family members.  Based on this, the CIT determined that substantial evidence did not support finding that the family members constitute a "person" for purposes of affiliation or collapsing analyses.[129]

- In the investigation, Commerce investigated the collapsing criteria extensively, and came to the correct conclusion then, as now, that the totality of the evidence does not support a collapsing determination between Prosperity and Yieh Phui.  The record showed that the family members of Prosperity and Yieh Phui do not share a common interest and do not interfere in, control, or participate in the business of the other family members.
  - First, there is no common ownership interest between Prosperity and Yieh Phui as neither company owns shares in the other, and no family members own shares in both.[130]  As

---

[121] *Id*.

[122] *Id*. at 2-3 (citing Final Collapsing Memo at 4).

[123] *Id*. at 4 (citing *Hontex Enterprises, Inc. v. United States*, 248 F. Supp. 2d 1323, 1344 (CIT 2003) (*Hontex*)).

[124] *Id*. (citing *Koyo Seiko Co., Ltd. v. United States*, 516 F. Supp. 2d 1323, 1346 (CIT 2007) (*Koyo Seiko*)).

[125] *Id*.

[126] *Id*.

[127] *Id*. at 4-5 (citing *Echjay*, 475 F. Supp. 3d at 1368-69).

[128] *Id*. at 5.

[129] *Id*. at 5 (citing *Echjay*, 475 F. Supp. 3d at 1368-69).

[130] *Id*. at 5 (comparing Prosperity's Sales Verification Report at SVE-2, page 8 with Prosperity's AQR at Exhibit 5).

such, the record does not support a finding that the Lin family is an intact family grouping, as required by *Echjay*.[131]

- o  Second, Prosperity and Yieh Phui share no managers or directors.[132]  Thus, the petitioners' argument that there are shared managers or directors due to the "familial relations" is unsupported by the fact and law.  As explained in *Echjay*, the finding of shared managers or directors requires that actual persons fill these roles at both companies; the constructed "person" in the abstract cannot serve to fulfill this criterion.[133]

- o  Finally, the operations of Prosperity and Yieh Phui are not intertwined in any way.  Specifically, Commerce verified that:  (1) Prosperity and Yieh Phui do not share sales information with each other; (2) they have no involvement in each other's production and pricing decisions; (3) they do not share facilities or employees; and (4) they had no significant transactions with each other.[134]  Further, Commerce also confirmed at verification that: "other than the familial relationship between the two chairmen, Prosperity and Yieh Phui are competitors and do not have any overlapping (or intertwined) business operations;" "Yieh Phui is Prosperity's main competitor in both the domestic and the export market;"[135] and further noted that "there is very little personal or professional interaction among the family members involved in the respective companies," and the companies "do not have any agreements with respect to price, customers, or market segment."[136]

- •  The petitioners' attempt to manufacture "intertwined operations" based on an agreement between Prosperity and Yieh Phui that each may appoint one of Synn's directors is without merit.  Commerce correctly recognized in the Draft Results that such an arrangement between the largest shareholders in a company is not extraordinary and not to be considered, in itself, evidence of potential for manipulation.[137]  The petitioners seek to counter this conclusion by arguing that whether or not such an arrangement is "extraordinary" is not the point.  However, the petitioners are incorrect; whether the arrangement is "extraordinary" is very much the point, as collapsing is meant to be based on "unusual situations", and is not intended to be applied for every ordinary interaction.[138]  Thus, Commerce was correct in its determination that this agreement does not indicate a "significant" potential for manipulation that warranted collapsing.[139]

- •  Further, the cases cited by the petitioners to support collapsing are inapt.  In *PET Resin from Indonesia*, Commerce, citing to *Ferro-Union*, noted that for purposes of affiliation, Commerce found that a family group exercised restraint or control over affiliated companies, pursuant to section 771(33)(A) and (F) of the Act, in several cases.[140]  However, the

---

[131] *Id.* at 5-6.

[132] *Id.* at 6 (comparing Prosperity's Sales Verification Report at SVE-2, page 33, with SVE-3, page 2-3; and citing Yieh Phui's Sales Verification Report at 4).

[133] *Id.* at 6 (citing *Echjay*, 475 F. Supp. 3d at 1373).

[134] *Id.*

[135] *Id.* at 7 (citing Prosperity's Sales Verification Report at 4-5 and Yieh Phui's Sales Verification Report at 4).

[136] *Id.* at 7 (citing Prosperity's Sales Verification Report at 4).

[137] *Id.* (citing Draft Results at 11).

[138] *Id.* at 7-8 (citing *Koyo Seiko*, 516 F. Supp. 2d at 1346; and *Preamble*, 62 FR at 27345).

[139] *Id.* at 8 (citing Draft Results at 11).

[140] *Id.* at 8 (citing *PET Resin from Indonesia* PDM at 8; and *Ferro-Union*, 44 F. Supp. 2d at 1325-26 (Prosperity notes that *Ferro-Union* does not address the requirements for collapsing, other than in an adverse facts available context)).

petitioners omit the relevant detail that, in that investigation, Commerce further explained that "… in each of these cases, Commerce considered whether there was control through a family group by examining the control factors of each member (*i.e.*, stock ownership, management positions, board membership) and then considering their aggregate effect."[141] Thus, "familial relations" were not sufficient in themselves to meet the requirements for affiliation, much less the more rigorous standards for collapsing. Moreover, the "totality of circumstances" under which Commerce collapsed three producers in *PET Resin from Indonesia* was very different from the facts of this case.[142] In *PET Resin from Indonesia*, two brothers each held 50 percent of the shares of <u>one single</u> company, and through this company held shares in the three collapsed producers.[143] Additionally, one of the brothers served as a commissioner at all three of the collapsed producers. These facts were considered along with "other indicia of the potential for manipulation" (specifics of the other indicia were bracketed as proprietary).[144] Based on these facts, Commerce determined to combine the individual shares of the two brothers with the result that the brothers, as a family unit, had controlling shares of the three producers. The totality of circumstances in *PET Resin from Indonesia* are very different than those in the investigation under litigation, as discussed above.[145]

- The petitioners' alternative argument, to collapse Prosperity with Yieh Phui based on interactions with Synn, essentially contravenes the Federal Circuit's holding in *Prosperity III*. In its *Remand Order*, the CIT also instructed that the Federal Circuit "viewed as impermissible Commerce's deeming an analysis of the relationship between Prosperity and Synn to be an analysis of the relationship between Prosperity and the Yieh/Synn entity, regardless of the earlier, uncontested collapsing."[146] Because there is no basis to collapse Prosperity with Yieh Phui, as discussed above, collapsing them based on the interactions is not permissible.

**Commerce's Position**: As detailed below, we are not persuaded by the petitioners' arguments that Prosperity and YP/Synn should continue to be collapsed as a single entity. In the original investigation, Commerce found that Yieh Phui and Prosperity are affiliated with each other based on a family relationship, as the chairman of Yieh Phui and the chairman of Prosperity Tieh are [                    ] and a part of the Lin family.[147] In the Draft Results, we acknowledged this, but – with respect to collapsing, noted that the evidence on the record in this case does not support common family control by a family grouping.[148] The petitioners assert that we did not

---

[141] *Id*.
[142] *Id*. at 9.
[143] *Id*. (citing *PET Resin from Indonesia* PDM at 8) (emphasis in original).
[144] *Id*.
[145] *Id*.
[146] *Id*. (citing CIT *Remand Order* at 12).
[147] *See* Final Collapsing Memo at 4 (citing Prosperity Tieh's AQR at 14, footnote 9).
[148] *See* Draft Results at 11.

adequately evaluate the collapsing criteria with respect to whether the Lin family "person" exerts common control. Moreover, the petitioners assert that the record does support common control by a family grouping, noting that our record reflects that members of the Lin family control the board of Yieh Phui and its affiliates, as well as that of Prosperity and its affiliates. The petitioners are correct that the record plainly reflects that the chairmen of Prosperity and Yieh Phui are [                ] and that verification reports and other record sources identify Lin family members as owners and directors of each company and relevant affiliates.[149] Further, under Commerce's established practice as affirmed by the CIT, a family (including extended family) may be viewed as a "person" for purposes of the affiliation and collapsing analyses.[150] However, we agree with the respondent parties that the petitioners improperly conflate the issues of affiliation with whether the more rigorous standard of collapsing has been satisfied. The fact that there exists a familial relationship between the chairmen of Prosperity and Yieh Phui satisfies the standard for affiliation under section 771(33)(A) of the Act. However, this familial relationship by itself is insufficient for Commerce to find that the Lin family grouping, such that one exists, constitutes a "person" for affiliation under section 771(33)(F) of the Act and for collapsing purposes, under 19 CFR 351.401.

   With respect to collapsing, the CIT has held that "the potential for manipulation must be significant"[151] and has affirmed Commerce's practice of looking for "relatively unusual situations, where the type and degree of relationship is so significant that {it finds} there is a

---

[149] *See, e.g.*, Prosperity's December 8, 2015, Second Supplemental Sections A-C Response at 10; and Yieh Phui's AQR at 6 and Exhibits 5 and 6.
[150] *See Ferro–Union*, 44 F. Supp. 2d. at 1325-26.
[151] *See Hontex*, 248 F. Supp. 2d at 1344.

strong possibility of price manipulation."[152]  Thus, relevant precedent makes clear the higher standard for a collapsing finding, and the petitioners fail to contend with these distinctions.

With respect to affiliation under section 771(33)(F) of the Act, and whether a family grouping constitutes a "person," the CIT recently held in *Echjay* that the conclusion that the owners of family businesses are affiliated alone does not support that a family grouping constitutes a "person" that may control multiple companies in accordance with section 771(33)(F) of the Act.[153]  In order to conclude that a family grouping is a "person" capable of collective control, Commerce must also find that the family grouping shares a common interest or consists of relationships that could impact business decisions of the family-owned companies.[154]  In order to ensure that the persons involved are family members as contemplated by the affiliation statute, a family grouping analysis requires evaluation of the "nature of the relationship" among the family members.[155]  Thus, in analyzing this issue, "Commerce may not automatically find affiliated family members to be a person under {section 771(33)(F) of the Act} but must instead address the evidence" of the family and company interactions.[156]  Accordingly, Commerce cannot base its conclusion that a family grouping constitutes a "person" on the mere fact that persons involved in the businesses are family members with the same surname—there must be more to show a common interest or that the grouping consists of relationships that could impact business decisions of family owned companies.

Further, with respect to collapsing, the CIT held that even though a family grouping in the aggregate owns a majority of the family businesses, a conclusion that there exists a

---

[152] *See Koyo Seiko*, 516 F. Supp. 2d at 1346.
[153] *See Echjay*, 475 F. Supp. 3d at 1367-69.
[154] *Id*. at 1368 (citing *Ferro-Union*, 44 F. Supp. 2d at 1326) ("Commerce concluded that anyone with the same last surname was a member of the same family.  On remand, Commerce should inform itself of the nature of the relationships among these people {…}.").
[155] *Id*.
[156] *Id*. at 1368-69.

significant potential of price or production manipulation requires the "predicate analysis" that the family grouping is "in fact an intact family grouping."[157]  Thus, the mere fact that there are "familial relations" between two entities does not in itself support a determination that the two entities constitute a single person for purposes of affiliation and collapsing.[158]  In *Echjay*, record evidence in the form of legal separation agreements and family hostilities showed that the entities controlled by the various family members did not interfere in, control, or participate in the business of the other family members and, as such, the CIT found that substantial evidence did not support Commerce's finding that the family members constitute a "person" for purposes of affiliation or collapsing analyses.[159]  Although there is no evidence of legal separation agreements or family hostilities on the record of this case, *Echjay* makes clear that Commerce may not automatically find a family grouping constitutes a "person" for affiliation and collapsing purposes without addressing evidence of family and company interactions and the nature of the family relationships.[160]

As Yieh Phui notes, the petitioners' characterization of the record with respect to relevant precedent omits the context that the Lin family members involved in the ownership, board, or management of Prosperity and its affiliates are all direct family relations (*i.e.*, sibling, spouse, or parent/child) of Mr. Kao-Huang Lin, and that the Lin family members involved in the ownership, board, or management of Yieh Phui are all direct family relations of Mr. Lin, I Shou.  Critically, there is no overlap of ownership, directorship, or management by any individual member of either branch of the Lin family with the other (*i.e.*, involvement of Lin family members in Yieh Phui remains distinct to direct family members of Mr. Lin, I Shou, and involvement of Lin

---

[157] *See Echjay*, 475 F. Supp. 3d at 1374.
[158] *Id.*
[159] *Id.*
[160] *Id.*

family members in Prosperity remains distinct to direct family members of Mr. Kao-Huang

Lin).[161]   None of the family members of either of the two Lin family groups operates or manages

businesses that are owned or controlled by the other Lin family group.[162]   As Prosperity notes,

Commerce's findings at verification further support that the Yieh Phui and Prosperity

components of the "Lin family grouping" in this case are not intertwined, specifically finding

that:  (1) Prosperity and Yieh Phui do not share sales information with each other; (2) they have

no involvement in each other's production and pricing decisions; (3) they do not share facilities

or employees; and (4) they had no significant transactions with each other.[163]   Further,

Commerce also received information at verification that:  "other than the familial relationship

between the two chairmen, Prosperity and Yieh Phui are competitors and do not have any

overlapping (or intertwined) business operations;" "Yieh Phui is Prosperity's main competitor in

both the domestic and the export market;"[164] "there is very little personal or professional

interaction among the family members involved in the respective companies" and the companies

"do not have any agreements with respect to price, customers, or market segment."[165]   Thus, we

agree with the respondent parties that the record lacks sufficient evidence to conclude that the

Lin family grouping is, in fact, an intact family grouping.  Rather, the record evidence

demonstrates divided family ownership between two distinct Lin family lines and separate

control of businesses.  Accordingly, based on our evaluation of the record as it pertains to family

and company interactions, we find that the two Lin family groups do not operate collectively, as

---

[161] *See, e.g.*, Yieh Phui's AQR at Exhibit 4, and Yieh Phui's November 25, 2015 Section A-C Supplemental Response at 4; *see also* Prosperity's AQR at Exhibit A-4 through A-7.
[162] *Id.*
[163] *See* Prosperity's Sales Verification Report at 4-5.
[164] *Id.*
[165] *Id.*

a cohesive unit, sharing a common interest or consisting of relationships that could impact business decisions of family-owned companies.

Further, we agree that the petitioners' citation to the *PET Resin from Indonesia*, is inapposite.  In that case, Commerce explained that "in each of {the cases cited in support of a finding of common control by a family grouping}… Commerce considered whether there was control through a family group by examining the control factors of each member (*i.e.*, stock ownership, management positions, board membership) and then considering their aggregate effect."[166]  Thus, Commerce's practice exhibited in *PET Resin from Indonesia* demonstrates that "familial relationships" are not sufficient in themselves to meet  the standard for collapsing.  Moreover, the "totality of circumstances" upon which Commerce based its determination to collapse three producers in *PET Resin from Indonesia* was distinct from the factual circumstances in this case.  In *PET Resin from Indonesia*, two brothers each held 50 percent of the shares of one single company, and through this company held shares in the three collapsed producers.[167]  Additionally, one of the brothers served as a commissioner at all three of the collapsed producers.[168]  These facts were considered along with "other indicia of the potential for manipulation."[169]

Based on these facts, Commerce determined to combine the individual shares of the two brothers with the result that the brothers, as a family unit, had controlling shares of the three producers.  The totality of circumstances in *PET Resin from Indonesia* is very different from the body of circumstances in this case, as discussed above.[170]  Indeed, where Commerce has

---

[166]  *See PET Resin from Indonesia* PDM at 8.
[167]  *Id*.
[168]  *Id*.
[169]  *Id*.
[170]  *Id*.

collapsed companies based on control of a common "family person," involvement in the respective firms by various members of the same family has been overlapping and dispersed throughout the relevant entities (*i.e.*, a siblings holding a substantial combined ownership interest in various companies subject to the collapsing finding; an individual with a substantial ownership interest in one firm also maintaining a minority ownership interest or management position in a firm controlled by a relative; multiple members of the same family grouping holding management positions and ownership interest in one firm) and additional indicia of control have been present.[171]  Lacking any evidence of overlap between specific individuals of one group of the Lin family with the ownership, management, or operations of the respondent firm associated with individuals from the other group of the Lin family, we disagree that there exists an appropriate basis to find control by a "family person."

Regarding the prong of the collapsing regulation which directs Commerce to consider the extent of overlapping managers or directors between firms under 19 CFR 351.401(f)(2)(ii), as noted in the Draft Results, Prosperity and Yieh Phui share no managers or directors, and no party contests this finding.[172]  Rather, the petitioners again rely on the collective family grouping principle to satisfy this prong, noting that the record shows that the Lin family owns [

] both Yieh Phui and Prosperity and controls [                    ] both companies; that [

---

[171]  *See, e.g., Notice of Final Determination of Sales at Less Than Fair Value: Light-Walled Rectangular Pipe and Tube from Turkey*, 69 FR 53675 (September 2, 2004), and accompanying IDM at Comment 10; *see also Notice of Final Results of Antidumping Duty Administrative Review: Steel Concrete Reinforcing Bar from the Republic of Korea*, 69 FR 19399 (April 13, 2004), and accompanying IDM at Comments 1 and 2 (affirmed in *Dongkuk Steel Mill Co. v. United States*, Slip Op. 2005-75 (CIT 2005)); *Notice of Final Results of Antidumping Duty Administrative Review: Structural Steel Beams from the Republic of Korea*, 68 FR 2499 (January 17, 2003), and accompanying IDM at Comment 1; and *Notice of Final Determination of Sales at Less Than Fair Value: Polyethylene Terephthalate Film, Sheet, and Strip from Taiwan*, 67 FR 35474 (May 20, 2002), and accompanying IDM at Comment 4.
[172]  *See* Prosperity's Sales Verification Report at 2-3 and SVE-2, page 33 and SVE-3, page 2-3; *see also* Yieh Phui's Sales Verification Report at 3-5.

], Mr. Daniel Lin and Ms. Rechelle Lin, managed

Prosperity's sales and operations; whereas [                                                    ], also

serves on Yieh Phui's board of directors.[173]  However, the CIT has held that Commerce's

regulation on common management defined the inquiry more narrowly to require Commerce to

compile a list of managers or board members on one firm and compare them to the board of

directors on an affiliated firm; effectively holding that this prong of the analysis requires overlap

of individual persons and that the finding of shared managers or directors requires that actual

persons fill these roles at both companies; the constructed "person" in the abstract cannot serve

to fulfill this criterion.[174]  As noted in the Draft Results, the record reflects that none of

Prosperity or Yieh Phui's managers and directors serve as managers or directors of the other

firm.[175]

Further, regarding the third prong of the collapsing analysis, the record reflects no direct

evidence of intertwining of operations between Prosperity and Yieh Phui.  Specifically, the two

firms do not share sales information, have no involvement in each other's production and pricing

decisions, do not share facilities or employees, and had no significant transactions with each

other.[176]  The petitioners claim that the informal agreement between Prosperity and Yieh Phui on

the arrangement of Synn's directors shows "alignment of interest between Prosperity and Yieh

Phui and demonstrates that the companies work together in furtherance of those interests."[177]

---

[173] *See* Petitioners' Comments at 5-6 (citing Prosperity's December 8, 2015, Second Supplemental Sections A-C Response at 10); *see also* YP Sales Verification Report at 4; YP's Sales Verification Report at 2-3; Yieh Phui's AQR at 6 and Exhibits 5 and 6; and YP's December 7, 2015, Supplemental Sections A-C Response at Exhibit 7; Prosperity's Sales Verification Report at 4; and Yieh Phui's December 7, 2015 Second Supplemental Sections A-C Questionnaire Response at 2.
[174] *See Echjay*, 475 F. Supp. 3d at 1373-74 (citing *Jinko Solar Co. v. United States*, 229 F. Supp. 3d 1333, 1344 (CIT 2017)).
[175] *See, e.g.*, Prosperity's AQR at Exhibits A-4 and A-5; *see also* Yieh Phui's AQR at Exhibits A-4 and A-5.
[176] *See, e.g.*, Prosperity's AQR at Exhibits A-4 and A-5; *see also* Yieh Phui's AQR at Exhibits A-4 and A-5; YP Sales Verification Report at 4; and YP's Sales Verification Report at 2-3.
[177] *See* Petitioners' Comments at 7.

We continue to find the arrangement is not extraordinary or indicative of the potential to manipulate prices or production. It merely reflects that the largest two shareholders in Synn are allotted one representative of each company on the board of directors, not that they cooperate to further their collective joint interests with respect to CORE pricing or production in a dumping context. The record remains devoid of any indication that this agreement with respect to the board constitution of Synn was or could be used to manipulate price or production during the POI. Whereas the petitioners argue that it is irrelevant whether such an arrangement is "extraordinary," we agree with Prosperity that collapsing is intended for "unusual situations" and is not intended to be applied to every ordinary interaction,[178] and that the nature of the agreement as typical or extraordinary is a relevant consideration in evaluating whether there exists a significant potential for manipulation to warrant collapsing of two affiliated firms.

The petitioners argue that nothing in *Prosperity III* undermines Commerce's prior decisions to collapse Yieh Phui with Synn or to collapse Prosperity with Synn and, as such, there is no reason why Commerce cannot consider Synn's role in evaluating the potential for manipulation between Yieh Phui and Prosperity.[179] In principle, we agree with the petitioners that record evidence indicating the potential for manipulation between Prosperity and Yieh Phui – even if said evidence, in itself, might not ultimately be sufficient to sustain a collapsing finding based on the totality of circumstances between Prosperity and Yieh Phui – could be used, in concert with the evidence discussed in the *Final Determination* and First Remand Redetermination regarding the relationship between Prosperity and Synn and the unchallenged collapsing determination regarding Yieh Phui and Synn, in evaluating the totality of circumstances with respect to collapsing all three entities. However, as discussed above, outside

---

[178] *See Koyo Seiko*, 516 F. Supp. 2d at 1346; *see also Preamble*, 62 FR at 27345.
[179] *See* Petitioners' Comments at 8.

of information regarding each firm's involvement with Synn, we do not find any record evidence to suggest the potential for manipulation directly between Prosperity and Yieh Phui. In its remand order, the CIT stated that the Federal Circuit "viewed as impermissible Commerce's deeming an analysis of the relationship between Prosperity and Synn to be an analysis of the relationship between Prosperity and the Yieh/Synn entity, regardless of the earlier, uncontested collapsing."[180] Thus, lacking evidence of the potential for manipulation directly between Prosperity and Yieh Phui, we agree with the respondents that any finding to continue to collapse all three firms solely based on the intertwined operations of Prosperity with Synn to establish the potential for manipulation between Prosperity and Yieh Phui/Synn is impermissible under the Federal Circuit's mandate, as doing so would effectively result in resubmitting the *First Remand* results to the Court, which is plainly not compliant with the Court's directive.

Finally, as Commerce found no record evidence of actual manipulation of price or production between Prosperity and Yieh Phui,[181] the petitioners' arguments regarding the potential for manipulation between Prosperity and Yieh Phui by virtue of Prosperity's relationship with Synn rest on presumptions of what may transpire in the future. Whereas we found these presumptions of the potential for manipulation reasonable in our *Final Determination* and First Remand Redetermination, these determinations did not consider record information which questions whether such manipulation could occur in the future. Notably, the record contains information regarding Prosperity's divestment of its interest in Synn after the POI.[182] The POI is April 1, 2014, through March 31, 2015. The record shows that Prosperity's

---

[180] *See* CIT *Remand Order* at 12.
[181] Note that while evidence of actual manipulation of price or production, if found, would support a determination that there exists a significant potential for manipulation, such evidence is not required where other evidence supports that determination.
[182] *See* Prosperity's Sales Verification Report at 6, SVE-4 and SVE-8.

divestment of Synn became effective in December 2015.[183]  We issued our final determinations in May 2016, when we made our collapsing determination with respect to Prosperity and Synn.[184]  At the time, we did not consider record statements regarding Prosperity's post-POI divestment in Synn in our collapsing analysis.[185]  However, in this remand, the petitioners' arguments focus on how Prosperity and Yieh Phui could manipulate price and production through their ownership of Synn.[186]  In this context, we find that the fact that the investigation record reflects that Prosperity's ownership interest in Synn continued for only a short period following the POI and its complete divestment of ownership in Synn in December 2015 took effect prior to the issuance of the *Preliminary Determination* and, thus, prior to the imposition of antidumping (AD) duties, it thus becomes a relevant consideration to whether there exists a "significant potential for manipulation of price or production" between the entities.  Given that the collapsing criterion standard is focused on the price or production manipulation which might transpire in the future, the fact that Prosperity divested its interest in Synn prior to the issuance of the *Preliminary Determination* and, thus, prior to the imposition of AD duties indicates that concerns regarding the potential for future manipulation are unfounded.[187]

**Comment 2:  If Commerce Does Not Continue to Collapse All Three Companies, Synn Should Be Collapsed with Prosperity Rather Than Yieh Phui**

*Petitioners' Comments*[188]
- In the original final determination and first redetermination, Commerce explained at length that Synn should be collapsed with Prosperity based on record evidence with respect to common ownership, overlapping management, and intertwining of operations between the two companies.[189]  The Federal Circuit left that conclusion undisturbed, and the draft

---

[183] The January 4, 2016, *Preliminary Determination* was issued after the divestment became effective in December 2015, and there was no cash deposit requirement following the preliminary determination because Commerce's preliminary determination was negative.
[184] *See Final Determination*, 81 FR at 35314; *see also* Final Collapsing Memo at 8-9.
[185] *See* Final Collapsing Memo at 6-7.
[186] *See* Petitioners' Comments at 8-9.
[187] *See Preamble*, 62 FR at 27346.
[188] *See* Petitioners' Comments at 9-10.
[189] *Id.* at 9 (citing First Redetermination Results at 9-11).

redetermination states that "we maintain our prior position that the record supports Commerce's decision to collapse Prosperity and Synn."[190]  However, because Commerce concluded that it could not calculate two separate margins for Synn as part of two distinct collapsed entities, it decided to collapse Synn with only one of its parent companies (*i.e.*, Yieh Phui).

- Even if Commerce were correct in its assessment that Synn could be collapsed with one (and only one) company (a conclusion with which the petitioners disagree), it still must provide reasons to support whichever collapsing choice is made.  Here, no explanation was provided for why Commerce elected to collapse Synn with Yieh Phui rather than with Prosperity, and thus, the choice made in the Draft Results is arbitrary and unsupported by substantial evidence.[191]

- In the event that it does not collapse all three entities, any reasoned analysis would direct Commerce to collapse Synn with Prosperity, not Yieh Phui, as Synn's operations are much more highly intertwined with those of Prosperity, and a failure to collapse these entities would create a gap in the order.[192]  Therefore, in the final redetermination, if Commerce decides not to collapse all three companies and continues to find that it is only able to collapse Synn with one of the two firms in question, the record supports that it is more appropriate to collapse Synn with Prosperity rather than Yieh Phui.

*Prosperity's Rebuttal Comments*[193]

- Prosperity disagrees that the record supports collapsing Synn with Prosperity, rather than with Yieh Phui.  Prosperity divested itself from Synn, and thus, this issue is now irrelevant.[194]

**Commerce's Position:**  As detailed below, we are not persuaded by the petitioners' argument

that if Commerce does not continue to collapse all three companies (*i.e.*, Prosperity, Yieh Phui

and Synn), Synn should be collapsed with Prosperity rather than with Yieh Phui.  The petitioners

are correct that we did not discuss the "determination" to calculate a margin for Synn with one

mandatory respondent with which it is collapsed, Yieh Phui, and not the other, Prosperity.  The

decision to collapse Synn with Yieh Phui was first made at the preliminary stage of the

investigation and was uncontested throughout the proceeding and litigation.[195]  Additionally,

---

[190] *Id.* (citing Draft Results at 8).

[191] *Id.* at 10.

[192] *Id.* (citing Final Collapsing Memo at 7; and First Redetermination Results at 9-10 and 25-26).

[193] *See* Prosperity's Rebuttal Comments at 10.

[194] *Id.*

[195] *See* Memorandum, "Less Than Fair Value Investigation of Certain Corrosion-Resistant Steel Products from Taiwan:  Preliminary Affiliation and Collapsing Memorandum for Yieh Phui Enterprise Co., Ltd.," dated December 21, 2015 (Preliminary Collapsing Memo).

Yieh Phui reported without objection relevant margin calculation information regarding Synn's cost of production and home market sales.[196]  Commerce's  decision to collapse Synn with Prosperity was first made at the final stage of the investigation, and it was contested throughout the underlying proceeding and in litigation.[197]  Our reading of the Court's remand order required us to uncouple Prosperity's margin from Yieh Phui's absent additional collapsing analysis with respect to Prosperity and Yieh Phui.  Thus, the decision to calculate one margin for Prosperity, and one for the YP/Synn entity appeared to be a matter of course.  Nevertheless, the petitioners are correct that our separate determinations to collapse Yieh Phui and Synn, unchallenged at any stage of this proceeding, and Prosperity and Synn, challenged at the *Final Determination* and in litigation underlying the First Remand Redetermination, were undisturbed by the Federal Circuit and remain in effect.  Therefore, explanation of the Draft Results' determination to include Synn in the margin calculation and resulting AD rate for Yieh Phui and not for Prosperity, is appropriate.  As discussed below, we continue to find that it is appropriate to include Synn's information in the margin calculation for the YP/Synn entity.

In particular, the record reflects that Yieh Phui is the largest single owner of Synn with [  ] percent ownership, and contains uncontroverted evidence of board and management overlap between the companies (Yieh Phui's President is on Synn's board, Yieh Phui's vice president is also a vice president of Synn, various Yieh Phui managers are also managers at Synn), as well as clear evidence of operational intertwining, such as co-located facilities and payments of salaries

---

[196] *See* Yieh Phui's Letter, "Corrosion-Resistant Steel Products from Taiwan; Consolidated Home Market Sales and Cost of Production Databases, and Revised U.S. Sales Database," dated February 6, 2016.
[197] *See* Final Collapsing Memo.

for managers.[198]  For Prosperity and Synn, the basis for collapsing was also supported by

evidence:  Prosperity was the second largest shareholder of Synn with [  ] percent ownership,

Prosperity's chairman was also on the board of Synn (though no other overlap of board or

management between Prosperity and Synn was found), as well as record evidence of intertwined

operations (tolling arrangements and purchase and sale agreements between Prosperity and Synn

discussed at length in the prior remand).[199]

Accordingly, Yieh Phui satisfies all three non-exhaustive regulatory factors to

demonstrate the third collapsing prong of a "significant potential for manipulation of price or

production" and holds an clear edge over Prosperity with respect to two criteria (with a higher

ownership percentage and more management overlap).  Prosperity satisfies all three factors as

well, including significant ownership stake (albeit not the largest), an instance of high-level

board overlap (albeit a sole instance), and indicia of operational/transactional intertwining (the

significance of which is contested).  For this final redetermination, we find that the higher

ownership stake in Synn maintained by Yieh Phui (as its largest individual owner), the

significant ownership overlap and co-location of factory facilities, and in particular the record

information which demonstrates that Prosperity divested its interest in Synn discussed above,

support our determination in the Draft Results to include Synn's information in the calculation of

---

[198] *See* Preliminary Collapsing Memo at 5 ("{W}e find that there is significant common ownership between Yieh Phui and Synn Industrial during the POI … Record evidence demonstrates a significant level of common management of Yieh Phui and Synn Industrial.  Yieh Phui's President, Wu, Lin-Maw, serves on the Board of Directors of Synn Industrial.  In addition, Yieh Phui's Vice President, Mr. [                    ], serves as the Vice President of the Financial Division of Synn Industrial; Mr. [                    ], an employee of Yieh Phui, serves as the Assistant Vice President of the Commercial Division of Synn Industrial; and Mr. [              ], an employee of Yieh Phui, serves as the manager of the Financial Division of Synn Industrial.  Thus, we find that there is significant overlap in the management of Yieh Phui and Synn Industrial … The record indicates that operations between Yieh Phui and Synn Industrial are intertwined.  Yieh Phui and Synn Industrial's production facilities are located contiguous to each other and they share management personnel as described above.  Further, as described above, both companies produce merchandise under consideration, meaning that no re-tooling is necessary to produce merchandise under consideration.).
[199] *See* Final Collapsing Memo at 6-7.

the margin for YP/Synn and calculate a separate margin for Prosperity, and we continue to do so in this final redetermination. While YP/Synn will be excluded from the order as a result of this redetermination, in the future, to the extent evidence indicates that the circumstances have changed and that the three companies are acting as a collapsed entity, Commerce has authority to investigate the relationship of the companies and may find the merchandise produced by the collapsed entity to be subject to the order.

## IV.    FINAL RESULTS OF REDETERMINATION

The changes made to the margin calculation pursuant to these final results of redetermination result in a weighted-average dumping margin of 11.04 percent for Prosperity and 1.20 percent (*de minimis*) for YP/Synn. Because the margin for YP/Synn is now *de minimis*, the all-others rate will be based on the recalculated margin for Prosperity.

2/14/2022

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance