## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| PROSPERITY TIEH ENTERPRISE CO., LTD., and YIEH PHUI ENTERPRISE CO., LTD., )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>CLEVELAND-CLIFFS STEEL CORPORATION, CLEVELAND-CLIFFS STEEL LLC, NUCOR CORP., STEEL DYNAMICS, INC., CALIFORNIA STEEL INDUSTRIES, INC., and UNITED STATES STEEL CORP., )<br><br>Defendant-Intervenors. ) | Consol. Court No. 16-00138 |

## DEFENDANT-INTERVENORS' COMMENTS ON
## FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

Stephen P. Vaughn
Daniel L. Schneiderman
**KING & SPALDING LLP**
1700 Pennsylvania Ave., NW
Washington, DC 20006-4706
(202) 661-7847
*Counsel to Cleveland-Cliffs Steel Corporation and Cleveland-Cliffs Steel LLC*

Roger B. Schagrin
Jeffrey D. Gerrish
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW,
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel to Steel Dynamics, Inc. and California Steel Industries, Inc.*

Alan H. Price
Christopher B. Weld
**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-3375
*Counsel to Nucor Corporation*

Thomas M. Beline
Sarah E. Shulman
**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW
Washington, DC 20006
(202) 567-2316
*Counsel to United States Steel Corporation*

March 30, 2022

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   THE DECISION NOT TO COLLAPSE PT AND YP IS UNSUPPORTED BY SUBSTANTIAL RECORD EVIDENCE AND IS NOT IN ACCORDANCE WITH LAW ...............................................................................................................4

    A.    Commerce Erred In Considering Events Outside The POI When Finding No Potential For Manipulation ...............................................................4

    B.    Commerce Erred In Analyzing The Potential For Manipulation Solely By Reference To Ownership And Control By Individual Lin Family Members, Rather Than By The Lin Family In The Aggregate.................................9

III.  THE DECISION TO COLLAPSE SYNN WITH YP INSTEAD OF WITH PT IS UNSUPPORTED BY SUBSTANTIAL RECORD EVIDENCE AND IS NOT IN ACCORDANCE WITH LAW ...........................................................................13

    A.    Commerce Erred In Considering Events Outside The POI To Support Its Collapsing Analysis ....................................................................................14

    B.    Commerce's Finding Of Intertwined Operations Between Synn And YP Is Unsupported By Substantial Evidence....................................................14

IV.  CONCLUSION...........................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beijing Tianhai Indus. Co. v. United States*,
234 F. Supp. 3d 1322 (CIT 2017) ...........................................................8

*Data Gen. Corp. v. Johnson*,
78 F.3d 1556 (Fed. Cir. 1996) ...............................................................8

*Echjay Forgings v. United States*,
475 F. Supp. 3d 1350 (CIT 2020) ..............................................11, 12, 13

*Ferro-Union, Inc. v. United States*,
44 F. Supp. 2d 1310 (CIT 1999) ...........................................................9

*I.D.I. Int'l Dev. & Inv. Corp. v. United States*,
45 CIT __, Slip Op. 21-82 (2021) .........................................................8

*Jinko Solar Co. v. United States*,
229 F. Supp. 3d 1333 (CIT 2017) .........................................................11

*Jinxiang Yuanxin Imp. & Exp. Co. v. United States*,
37 CIT 917 (2013) ..............................................................................7

*Prosperity Tieh Enter. Co. v. United States* (*Prosperity I*),
284 F. Supp. 3d 1364, 1375 (CIT 2018) ...............................................6, 9

*Prosperity Tieh Enter. Co. v. United States* (*Prosperity II*),
358 F. Supp. 3d 1363 (CIT 2018) .................................................6, 7, 8, 9

*Prosperity Tieh Enter. Co. v. United States* (*Prosperity III*),
965 F.3d 1320 (Fed. Cir. 2020) ....................................................2, 6, 7

*Zhaoqing New Zhongya Aluminum Co., v. United States*,
70 F. Supp. 3d 1298 (CIT 2015) ....................................................11, 12

**Regulations & Agency Decisions**

19 C.F.R. § 351.401(f)(1) ...........................................................................3

19 C.F.R. § 351.401(f)(2) ..................................................................... *passim*

*Polyethylene Terephthalate Resin from Indonesia*,
83 Fed. Reg. 19,691 (May 4, 2018) .......................................................9

*Stainless Steel Bar from India,*
   75 Fed. Reg. 12,199 (Dep't Com. Mar. 15, 2010) ...................................................5

*Steel Concrete Reinforcing Bars from the Republic of Korea,*
   66 Fed. Reg. 33,526 (Dep't Com. June 22, 2001) ..................................................5

*Steel Wire Garment Hangers from the People's Republic of China,*
   73 Fed. Reg. 47,587 (Dep't Com. Aug. 14, 2008)...................................................5

*Steel Wire Rod from Germany,*
   63 Fed. Reg. 8953 (Dep't Com. Feb. 23, 1998).......................................................6

**DEFENDANT-INTERVENORS' COMMENTS ON
FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

Defendant-Intervenors Cleveland-Cliffs Steel Corporation, Cleveland-Cliffs Steel LLC, Nucor Corp., Steel Dynamics, Inc., California Steel Industries, Inc., and United States Steel Corporation provide these comments in opposition to the Department of Commerce's February 14, 2022 Final Results of Redetermination Pursuant to Court Remand (the "*Second Redetermination*") (ECF No. 155). In the *Second Redetermination*, Commerce reconsidered its collapsing decisions with respect to respondents Prosperity Tieh Enterprise Co., Ltd. ("PT"), Yieh Phui Enterprise Co., Ltd. ("YP"), and Synn Industrial Co., Ltd. ("Synn"). As part of that reconsideration, Commerce determined that PT and YP should not be collapsed as part of a single entity. Commerce also determined that Synn should be collapsed with YP rather than with PT. These findings cannot be sustained, however, because the *Second Redetermination* suffers from multiple fatal errors, including the unlawful consideration of events occurring outside the period of investigation ("POI") in direct contravention of established agency practice, this Court's prior rulings, and the doctrines of "law of the case" and "judicial estoppel." Thus, for the reasons explained below, this Court should hold that the *Second Redetermination* is unsupported by substantial record evidence and is otherwise not in accordance with law. The Court should remand this case back to Commerce and direct it to reconsider its collapsing decisions.

I.     **INTRODUCTION**

In both its original final determination and in its first redetermination, Commerce found that Synn should be collapsed with both of its parent companies (*i.e.*, PT and YP) and, consequently, that all three companies should be treated as a single entity. *See* Final Affiliation

and Collapsing Memorandum (May 24, 2016) (P.R. 379, C.R. 595);[1] *First Redetermination* (May 23, 2018) (ECF No. 87).[2]  The Federal Circuit found Commerce's analysis to be incomplete, because Commerce had evaluated the regulatory collapsing factors as between Synn and YP and as between Synn and PT but had not also evaluated those factors to determine whether further collapsing of YP and PT was justified.  *Prosperity Tieh Enter. Co. v. United States*, 965 F.3d 1320, 1327-28 (Fed. Cir. 2020) ("*Prosperity III*").  The Federal Circuit concluded that the mere fact that Synn could be collapsed with both PT and YP was not sufficient to support a decision to collapse all three companies; some evaluation of the factors set forth at 19 C.F.R. § 351.401(f)(2) had to be performed to show a significant potential for manipulation as between PT and YP (or between one of these entities and an already collapsed entity).  *Id*.  Commerce's *Second Redetermination* attempts to address the Federal Circuit's concern.

In the *Second Redetermination,* Commerce noted that the decision to collapse Synn with YP had not been challenged and thus should not be revisited.  *Second Redetermination* at 8-9. Moreover, Commerce recognized that "the Federal Circuit did not address whether the record supports Commerce's determination to collapse Prosperity and Synn," and thus Commerce maintained its "prior position that the record supports Commerce's decision to collapse

---

[1]    Citations to public and confidential documents on the administrative record of the original investigation (ECF No. 42) are presented as "P.R. __" and "C.R. __," respectively. Citations to public and confidential documents on the administrative record of the second remand proceeding (ECF No. 157) are presented as "Rem-P.R. __" and "Rem-C.R. __," respectively.

[2]    As discussed in Part **II.A** below, this Court required Commerce to reconsider the collapsing issue in the first redetermination because, in the original final determination, the agency had erroneously relied upon certain transactions occurring outside the POI.  After disregarding such evidence, Commerce continued to collapse PT, YP, and Synn as a single entity.  *First Redetermination* at 22 (ECF No. 87).

Prosperity and Synn." *Id.* at 10. In other words, both the original decision to collapse Synn with YP and the decision to collapse Synn with PT remain in place. However, Commerce concluded that it could not calculate both a YP/Synn margin and a separate PT/Synn margin. *Id.* It also found the evidentiary record insufficient to collapse PT and YP. *Id.* Thus, Commerce decided to treat PT as a separate, standalone entity. *Id.* Commerce's conclusions are unsupported by substantial record evidence and otherwise not in accordance with law.

In deciding how to treat affiliated producers in antidumping proceedings, Commerce is guided by 19 C.F.R. § 351.401(f)(1), which provides that Commerce "will treat two or more affiliated producers as a single entity" if (1) those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and (2) Commerce concludes that "there is a significant potential for the manipulation of price or production."

In this case, there has never been any dispute that PT, YP, and Synn are affiliated. Furthermore, there is no dispute that PT, YP, and Synn each has production facilities for similar or identical products that would not require substantial retooling to restructure manufacturing priorities. Thus, these requirements for collapsing are plainly satisfied. The key issue, therefore, is whether "there is a significant potential for the manipulation of price or production." The factors that Commerce should consider in analyzing this topic are found in 19 C.F.R. § 351.401(f)(2).[3] Commerce's consideration of those factors in its *Second Redetermination* is

---

[3]    The factors to be considered include: (i) the level of common ownership; (ii) the extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and (iii) whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers. *See* 19 C.F.R. § 351.401(f)(2).

deeply flawed.  The record shows that Commerce inappropriately considered evidence of events

taking place after the POI and that it failed to conduct a proper evaluation of the record evidence

of common family ownership and control over both PT and YP that warranted collapsing those

two companies.  Commerce also erred in considering post-POI information as the basis for its

decision to collapse Synn with YP instead of with PT.  As explained below, the Court should

remand for Commerce to correct those errors and reconsider its collapsing decisions.

## II.  THE DECISION NOT TO COLLAPSE PT AND YP IS UNSUPPORTED BY SUBSTANTIAL RECORD EVIDENCE AND IS NOT IN ACCORDANCE WITH LAW

### A.  Commerce Erred In Considering Events Outside The POI When Finding No Potential For Manipulation

During the remand proceeding, Defendant-Intervenors explained why the joint ownership

and control that YP and PT exercised over Synn presented a "significant potential for the

manipulation of price or production" among all three companies under 19 C.F.R.

§ 351.401(f)(2).  Comments On Draft Results of Second Redetermination (Dec. 10, 2021) at 7-9

(Rem-P.R. 11).  Commerce rejected those arguments and found no possibility of manipulation on

those grounds, because PT had divested its ownership in Synn in December 2015 (*i.e.*, after the

POI ended in March 2015).  *Second Redetermination* at 32-33.  According to Commerce, "given

that the collapsing criterion standard is focused on the price or production manipulation which

might transpire in the future, the fact that Prosperity divested its interest in Synn … prior to the

imposition of AD duties indicates that concerns regarding the potential for future manipulation

are unfounded."  *Id*. at 33.  Commerce's consideration of, and reliance upon, this type of post-

POI development was plainly erroneous.  Not only did Commerce depart (without explanation)

from established agency practice, it also violated the "law of the case" and "judicial estoppel" doctrines.[4]

During the underlying investigation, Commerce stated as follows:

> Prosperity Tieh argues that it sold its shares in Synn Industrial subsequent to the POI, and thus it is no longer affiliated with Synn Industrial, and therefore there exists no potential for manipulation of price or production in the future. *However, the Department is obligated to consider information concerning circumstances that existed and events that occurred only during the POI.* Thus, we have not considered Prosperity Tieh's divestment of its shares in Synn Industrial for purposes {of} our affiliation/collapsing analysis for the final determination.

Final Affiliation and Collapsing Memorandum (May 24, 2016) at 6-7 (P.R. 379) (emphasis added). Commerce further cited its established practice of basing collapsing determinations solely on circumstances as they existed during the POI. *Id.* at n.29, citing *Steel Concrete Reinforcing Bars from the Republic of Korea*, 66 Fed. Reg. 33526 (Dep't Commerce June 22, 2001) (final determination) at Comment 1 (refusing to consider post-POI changes in ownership as part of the collapsing analysis) and *Steel Wire Garment Hangers from the People's Republic of China*, 73 Fed. Reg. 47587 (Dep't Commerce Aug. 14, 2008) (final determination) at Comment 8F (refusing to consider post-POR discontinuation of production, because the collapsing analysis "is retrospective"). Other cases provide further support for this longstanding practice. *See, e.g., Stainless Steel Bar from India*, 75 Fed. Reg. 12199, 12201 (Dep't Commerce Mar. 15, 2010) (preliminary results) (refusing to consider post-POR production of subject

---

[4] These objections are being presented now for the first time. There was no failure to exhaust administrative remedies, however, because Commerce did not consider the improper information until it issued the final results of redetermination, *i.e.*, after the parties were permitted to submit comments on the draft results of redetermination. *See* Draft Results of Redetermination (Nov. 24, 2021) (Rem-P.R. 2). This brief, therefore, represents Defendant-Intervenors' first opportunity to raise these objections. The same is true with respect to the other arguments presented in this brief below, each of which is directed at findings and decisions made by Commerce for the first time in its February 14, 2022 final results of redetermination.

merchandise in the collapsing analysis); *Steel Wire Rod from Germany*, 63 Fed. Reg. 8953, 8957 (Dep't Commerce Feb. 23, 1998) (final determination) at Comment 3 (refusing to consider post-POI changes in affiliation as part of the collapsing analysis).

On appeal, this Court upheld this aspect of Commerce's original final determination in the underlying investigation. *Prosperity Tieh Enter. Co. v. United States*, 358 F. Supp. 3d 1363, 1369 (CIT 2018) ("*Prosperity II*") ("Prosperity also argues that its subsequent sale of the shares negates a possibility of future manipulation, but the sale occurred in December 2015, well after the close of the POI on March 31 of that year. The common ownership, therefore, had significance through and beyond the POI itself"). Moreover, this Court agreed with PT that Commerce erred in considering other evidence regarding cold-rolling services occurring outside the POI to support the collapsing decision. *See Prosperity Tieh Enter. Co. v. United States*, 284 F. Supp. 3d 1364, 1375 (CIT 2018) ("*Prosperity I*"). As the Court of Appeals for the Federal Circuit would later describe it, "the Trade Court vacated Commerce's Final Determination, concluding that Commerce had improperly relied on evidence outside of the period of investigation." *Prosperity III*, 965 F.3d at 1324. In other words, this Court upheld Commerce's decision to disregard PT's post-POI divestment of Synn, and it required Commerce to disregard other transactions occurring outside the POI, for purposes of the collapsing analysis.

On remand in 2018, Commerce revised its analysis to exclude consideration of the cold-rolling transactions occurring outside of the POI. *First Redetermination* at 22 (ECF No. 87). In that first redetermination, Commerce reiterated that "with respect to Prosperity's argument that it divested its ownership of Synn subsequent to the POI, and therefore there is no 'future' potential manipulation possible between Prosperity and Synn, our examination of the record is limited to activities that transpired during the POI." *Id.* at 30. This Court upheld that redetermination.

*Prosperity II,* 358 F. Supp. 3d at 1369. The decisions by Commerce and this Court not to consider evidence outside the POI as part of the collapsing analysis were left undisturbed by the Federal Circuit, which remanded the collapsing decision for entirely unrelated reasons. *Prosperity III*, 965 F.3d at 1327-28.

In the *Second Redetermination* currently under review, although Commerce acknowledges that it did not previously consider PT's December 2015 divestment, it asserts that it now finds the transaction to be relevant because a divestment tends to undermine the contention that joint ownership and control of Synn could lead to "price or production manipulation which might transpire in the future." *Second Redetermination* at 33. But the evidence is no more relevant now than it was during the original investigation. As explained above, PT had argued repeatedly (and, until now, unsuccessfully) that the divestment removed any potential for "future manipulation." *Prosperity II,* 358 F. Supp. 3d at 1369; Final Affiliation and Collapsing Memorandum (May 24, 2016) at 6 (P.R. 379).

Commerce's current reliance on the post-POI development flatly contradicts its decisions in the original final determination and first redetermination, as well as with the above-cited agency practice and rulings by this Court. While Commerce generally has the discretion to depart from its prior practice, the agency must "adequately explain{} both why it is deviating from a former practice" and "why the new practice is appropriate." *Jinxiang Yuanxin Imp. & Exp. Co., Ltd. v. United States*, 37 CIT 917, Slip Op. 13-77 (2013) at n.6. Commerce has not done so here. Indeed, the *Second Redetermination* does not even acknowledge the existence of a contrary established practice – let alone attempt to explain why a departure is warranted. *Second Redetermination* at 32-33. For that reason alone, a remand is required.

Furthermore, Defendant-Intervenors respectfully submit that on remand, Commerce should be precluded from considering post-POI evidence – even if it could provide a reasoned basis for doing so. Even assuming for the sake of argument that Commerce retains discretion to depart from established practice in other determinations, doing so in this particular case plainly violated the "law of the case" doctrine. "Generally, under the doctrine of the law of the case, when a court decides upon a rule of law, *that decision should continue to govern the same issues in subsequent stages in the same case.*" *Beijing Tianhai Indus. Co. v. United States*, 234 F. Supp. 3d 1322, 1330 (CIT 2017) (internal quotations omitted) (emphasis added). As explained above, this Court already sustained Commerce's decisions in prior stages of this litigation to base the collapsing analysis solely on information and developments during the POI and to disregard events and transactions occurring outside the POI. Indeed, this Court specifically upheld Commerce's decision not to consider PT's divestment of Synn as negating "a possibility of future manipulation." *Prosperity II,* 358 F. Supp. 3d at 1369. In short, we have a clear legal finding – upheld by this Court – that transactions or occurrences are relevant to "future manipulation" in the collapsing analysis only when they take place during the POI. That particular issue already has been resolved and may not be reopened in this subsequent stage of the litigation.

Commerce should also be judicially estopped from considering post-POI evidence. "The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." *I.D.I. Int'l Dev. & Inv. Corp. v. United States*, 45 CIT __, Slip Op. 21-82 (2021) at 25, citing *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996). Commerce previously argued that non-POI transactions must be disregarded in the collapsing

analysis – and that argument was upheld by this Court, *see Prosperity II,* 358 F. Supp. 3d at 1369. Thus, Commerce should be estopped from taking a directly contrary position now that it wishes to reach a different outcome.

The Court should reject any characterization of Commerce's consideration of the post-POI divestment as harmless error. Nothing in the *Second Redetermination* establishes that the same result would have been reached without consideration of that evidence. In *Prosperity I*, Commerce acknowledged that it should not have considered certain cold-rolling transactions between PT and Synn occurring outside the POI, but it argued that the collapsing decision was nonetheless supported by substantial evidence even without those particular transactions. This Court disagreed, explaining that because it "must conduct its review according to the findings of fact and the reasoning the agency puts forth, the Department's collapsing decision cannot be sustained according to the applicable standard of review." *Prosperity I*, 284 F. Supp. 3d at 1375. Because the collapsing decision here was improperly based on consideration of the post-POI divestment, the Court should order Commerce to reach a new determination on the collapsing issue without considering that information.

> **B.** **Commerce Erred In Analyzing The Potential For Manipulation Solely By Reference To Ownership And Control By Individual Lin Family Members, Rather Than By The Lin Family In The Aggregate**

Under Commerce's established practice, a family – even an extended family – may be viewed as a "person" for purposes of the affiliation and collapsing analyses. *See, e.g., Polyethylene Terephthalate Resin from Indonesia*, 83 Fed. Reg. 19691 (May 4, 2018), Prelim. Dec. Memo at 8 (unchanged in final determination); *Ferro-Union, Inc. v. United States*, 44 F. Supp. 2d 1310, 1325-26 (CIT 1999). During the remand proceeding, Defendant-Intervenors demonstrated that YP and PT should be collapsed based on their common ownership and control

by the Lin family. Comments On Draft Results of Second Redetermination (Dec. 10, 2021) at 4-9 (Rem-C.R. 21, Rem-P.R. 11). In particular, the record establishes that:

- PT is privately owned by the Lin family, and Lin family members serve on the board of directors and in high-level managerial positions within the company. Comments On Draft Results of Second Redetermination (Dec. 10, 2021) at 4-5 (Rem-C.R. 21), citing PT Sales Verification Report (Apr. 13, 2016) at 4 (C.R. 568), PT Cost Verification Report (Apr. 12, 2016) at 4 (C.R. 555).

- YP is owned by a series of Lin-family owned and controlled [
        ], and Lin family members serve on YP's board of directors. Comments On Draft Results of Second Redetermination (Dec. 10, 2021) at 5-6 (Rem-C.R. 21), citing YP Sales Verification Report (April 13, 2016) at 2-3 (C.R. 569); YP's Section A Response (Sep. 11, 2015) at 6 and Exhibits 5 and 6 (C.R. 32-38); YP's Second Supplemental Sections A-C Responses (Dec. 7, 2015) at Exhibit 7 (pages 13-14, and 23-26) and Exhibit 9 (pages 17, 27, 45, and 48-49) (C.R. 335-337).

- The chairmen of the boards of directors for YP and PT, [
                                            ]. Comments On Draft Results of Second Redetermination (Dec. 10, 2021) at 6 (Rem-C.R. 21), citing YP Sales Verification Report (April 13, 2016) at 4 (C.R. 569).

None of these facts are in dispute. *See Second Redetermination* at 24 ("the petitioners are correct that the record plainly reflects that the chairmen of Prosperity and Yieh Phui are [

] and that verification reports and other record sources identify Lin family members as owners and directors of each company and relevant affiliates"). Defendant-Intervenors demonstrated, therefore, that the Lin family owns [                                    ] both YP and PT and controls [              ] both companies. These factors should have weighed strongly in favor of collapsing. Commerce rejected this analysis, however, because it erroneously believed that, even in cases involving control of two companies by a family entity, the factors at 19 C.F.R. § 351.401(f)(2)(i) and (ii) can support collapsing only when the *same individual family members* own both companies, *Second Redetermination* at 26 and 29, and when the *same individual family members* serve as managers or directors of both companies.

*Second Redetermination* at 30. According to Commerce, this Court held that 19 C.F.R. § 351.401(f)(2)(ii) "requires overlap of individual persons" and "requires that actual persons fill these roles at both companies; the constructed 'person' in the abstract cannot serve to fulfill this criterion." *Second Redetermination* at 30, citing *Echjay Forgings v. United States*, 475 F. Supp. 3d 1350 (CIT 2020) ("*Echjay*") and *Jinko Solar Co. v. United States*, 229 F. Supp. 3d 1333 (CIT 2017) ("*Jinko Solar*"). In short, Commerce assumed that a collapsing analysis must be conducted at the level of individual family members rather than considering the family as a collective unit.

On this point, Commerce is simply wrong as a matter of law. The cases make clear that the regulatory factors to be considered under 19 C.F.R. § 351.401(f)(2) are non-exhaustive, and the statute broadly permits Commerce to find a "significant potential for manipulation" based on family ownership, management positions, and board memberships *in the aggregate*. In fact, *Echjay* states that "nothing precludes Commerce from considering that members of a family unit sit on the boards of two sets of entities as reflecting a potential for manipulation." *Echjay* at 1373, quoting *Jinko Solar*. As the Court further explained when addressing a similar collapsing analysis in *Jinko Solar*, "the affiliation statute is sufficiently broad that Commerce can consider a family grouping's collective indicia of control, including the collective board memberships and managerial positions held by a family grouping." *Jinko Solar*, 229 F. Supp. 3d at 1344. *See also Zhaoqing New Zhongya Aluminum Co., v. United States*, 70 F. Supp. 3d 1298, 1305 (CIT 2015) ("*New Zhongya*") ("members of the Kwong family are managers and members of the board of directors in all three companies. This supports a conclusion that there is a significant potential for manipulation"). The same concept applies with respect to common ownership. *See Echjay* at 1373 ("regarding the common ownership factor, caselaw supports Commerce's finding of

common ownership by a family grouping to support finding significant potential for manipulation"); *New Zhongya* at 1305 (although different Kwong family members owned the three companies at issue, "controlling ownership by the Kwong family members is a positive indicator of the significant potential for manipulation").

In short, there is no requirement that the same *individuals* own or serve as directors for both entities to find a significant potential for manipulation. *Collective* family ownership and control, even if there are no overlapping individuals, may also demonstrate such potential. Commerce failed to properly analyze the significance of collective family ownership and control here because it erroneously believed that it was precluded from finding a potential for manipulation absent the appearance of the same individuals on the boards of both PT and YP, or ownership by the same individuals. Commerce was incorrect, and as a result the *Second Redetermination* is not in accordance with law. This case should be remanded with instructions for Commerce to reconsider whether aggregate Lin family ownership and control of both PT and YP was sufficient to create a significant potential for manipulation, even if it was not the same Lin family members owning or controlling both entities.

Furthermore, Commerce erred in finding that *Echjay* precluded it from treating the extended Lin family – including members on both the PT and YP "branches" of the family – as a single person for purposes of the collapsing analysis. *Second Redetermination* at 25-26. Commerce observed that "there is no overlap of ownership, directorship, or management by any individual member of either branch of the Lin family with the other (*i.e.*, involvement of Lin family members in Yieh Phui remains distinct to family members of Mr. Lin, I Shou, and involvement of Lin family members in Prosperity remains distinct to direct family members of Mr. Kao-Huang Lin)." *Id*. at 26-27. According to Commerce, this is analogous to the situation

presented in *Echjay*, where two sides of the Doshi family were not treated as part of the same single entity. *Id*. at 25-26. The situation in *Echjay*, however, is readily distinguishable from this one. *Echjay* involved hostile family subgroupings partitioned from each other pursuant to legal separation agreements, such that Commerce could not treat both factions as part of the same family entity. *Echjay* at 1368. In that case, therefore, Commerce could not infer a potential for manipulation from the fact that different family members owned or managed two companies when those individuals were on rival sides of the family. *Id.* at 1372-74. Here, there is no evidence of any such hostility or legal partitioning of the Lin family. There is no evidence of a PT "faction" of the family that is legally distinct from a YP "faction." The fact that the chairmen of the boards of PT and YP, although different individuals, are [            ] within the Lin family should have been considered as creating a significant potential for manipulation of price or production. And the fact that both YP and PT are owned by the Lin family – even if it cannot be shown that the same individual family members own significant amounts of both companies – should have similarly been considered as creating a such potential for manipulation. Instead, Commerce failed to properly consider this evidence due to an erroneous reading of *Echjay*. Commerce's analysis is not in accordance with law and is cause for remand and reconsideration of the collapsing analysis.

## III. THE DECISION TO COLLAPSE SYNN WITH YP INSTEAD OF WITH PT IS UNSUPPORTED BY SUBSTANTIAL RECORD EVIDENCE AND IS NOT IN ACCORDANCE WITH LAW

During the remand proceeding, Defendant-Intervenors explained that the Federal Circuit did not disturb Commerce's original determinations to collapse Synn with PT and Synn with YP. Comments On Draft Results of Second Redetermination (Dec. 10, 2021) at 9-10 (Rem-P.R. 11). Consequently, even if Commerce wrongfully decided to treat PT and YP as separate entities and

that Synn should be collapsed with only one of its two parent companies, it was required to explain why it selected one over the other. *Id*. In this case, Commerce elected to collapse Synn with YP, which (because YP's margin was *de minimis*) has the effect of excluding Synn from the order. *Second Redetermination* at 34-37. That decision is unsupported by substantial record evidence and is not in accordance with law.

### A. Commerce Erred In Considering Events Outside The POI To Support Its Collapsing Analysis

Commerce stated that in deciding to collapse Synn with YP rather than with PT, it considered several factors "and in particular the record information which demonstrates that Prosperity divested its interest in Synn." *Second Redetermination* at 36. In other words, the pivotal reason for why Commerce collapsed Synn with YP over PT was explicitly because of the post-POI divestment. However, as shown above, that divestment should not have been considered at all in the collapsing analysis. *See supra* **Part II.A**. Commerce's consideration of this evidence was not in accordance with law; it ran afoul of established agency practice and violated the doctrines of "law of the case" and "judicial estoppel." Accordingly, for the reasons explained above, this case should be remanded for Commerce to revisit its treatment of Synn without considering the post-POI information.

### B. Commerce's Finding Of Intertwined Operations Between Synn And YP Is Unsupported By Substantial Evidence

During the remand proceeding, Defendant-Intervenors explained that if Commerce wrongfully decided not to collapse PT, YP, and Synn as a single entity, Synn should be collapsed with PT rather than with YP, because it was highly intertwined operationally with the former and was not at all intertwined with the latter. Comments On Draft Results of Second Redetermination (Dec. 10, 2021) at 8-10 (Rem-P.R. 11). Thus, in the event that Commerce was

deciding which company to collapse with Synn, the "intertwined operations" factor at 19 C.F.R. § 351.401(f)(2)(iii) should have weighed heavily in favor of collapsing Synn with PT rather than YP. Commerce, however, stated that it found "clear evidence of operational intertwining" between Synn and YP, including "co-located facilities and payments of salaries for managers." *Second Redetermination* at 35-36. This finding is unsupported by substantial record evidence. Indeed, it is flatly contradicted by Commerce's original final determination, which held that "the record does not contain evidence to suggest that operations were intertwined between … Yieh Phui and Synn Industrial." Final Affiliation and Collapsing Memorandum (May 24, 2016) (P.R. 379) at 7. *See also id.* at 8 ("we do not find intertwined operations between Yieh Phui and Synn Industrial"). The final affiliation and collapsing memorandum, in other words, found a complete lack of intertwined operations between Synn and YP.

In the current remand, Commerce failed even to acknowledge those prior findings, let alone explain why they were incorrect. Instead, Commerce ignored them and cited to superseded findings from its *preliminary* collapsing memorandum. *Second Redetermination* at 36, n.198. That earlier document had observed that YP's and Synn's facilities are "located contiguous to each other." *Id.,* citing Preliminary Collapsing Memo (Dec. 21, 2015) (P.R. 272) at 5. But proximity alone does not imply "intertwined operations" absent some evidence of shared facilities or transactions between the entities. 19 C.F.R. § 351.401(f)(2)(iii). The preliminary collapsing memorandum also stated that the companies "share management personnel," *id.*, but that relates to the separate factor at 19 C.F.R. § 351.401(f)(2)(ii) regarding the extent to which managerial employees serve both companies, rather than to the "intertwined operations" factor at 19 C.F.R. § 351.401(f)(2)(iii). Accordingly, the fact that Synn is located next to YP and shares certain managers with YP does not support a finding of "intertwined operations" between the

entities. That is why, in its *final* affiliation and collapsing memorandum, Commerce found no intertwined operations between Synn and YP. Final Affiliation and Collapsing Memorandum (May 24, 2016) (P.R. 379) at 7-8. The *Second Redetermination* fails to explain why the final collapsing memorandum was wrong or why the scant information cited in the preliminary collapsing memorandum now constitutes substantial evidence of intertwined operations. Commerce's finding of intertwined operations between Synn and YP, therefore, is unsupported by substantial evidence.

By contrast, Synn was highly intertwined with PT, as Commerce explained at length in the original final determination and first redetermination. Final Affiliation and Collapsing Memorandum (C.R. 595) at 7; *First Redetermination* at 9-10 (ECF No. 87). In fact, during a portion of the POI when Synn's galvanizing operations were shut down for revamping, its steel was galvanized by PT under a tolling agreement. *First Redetermination* at 9-10 and 25-26. As Commerce explained, "this agreement demonstrates that the companies did not just have the capability to shift production from one entity to another but that *they actually did shift production during a significant portion of the POI, which we find to be qualitatively significant*." *Id*. at 26 (emphasis added). Moreover, Synn performed cold-rolling (an upstream process) for PT on a purchase and sale basis, and the companies shared proprietary production information. *Id*. at 10-11 and 28-29. Commerce found such activities were "not market behavior characteristic of competitors" but rather were "indicative of cooperative intertwined operations." *Id.* at 29. Absent collapsing, therefore, Synn and PT could simply shift production to the lower margin producer, which presents a significant potential for manipulation. Commerce failed in the *Second Redetermination* to weigh the high level of operational intertwining between Synn and PT against the utter lack of operational intertwining between Synn and YP. Had it done so,

it would have weighed strongly in favor of collapsing Synn with PT rather than with YP. This case should be remanded, therefore, for Commerce to reconsider its collapsing decision regarding Synn.

## IV.    CONCLUSION

For the reasons set forth above, the *Second Redetermination* is unsupported by substantial record evidence and is otherwise not in accordance with law. As a result, the Court should remand this case again for Commerce to reconsider its collapsing decisions.

Respectfully submitted,

| | |
|---|---|
| */s/ Daniel L. Schneiderman* | */s/ Alan H. Price* |
| Stephen P. Vaughn | Alan H. Price |
| Daniel L. Schneiderman | Christopher B. Weld |
| **KING & SPALDING LLP** | **WILEY REIN LLP** |
| 1700 Pennsylvania Avenue, NW | 1776 K Street, NW |
| Washington, DC 20006-4706 | Washington, DC 20006 |
| (202) 661-7847 | (202) 719-3375 |
| *Counsel to Cleveland-Cliffs Steel* | *Counsel to Nucor Corporation* |
| *Corporation and Cleveland-Cliffs Steel LLC* | |
| | |
| */s/ Roger B. Schagrin* | */s/ Sarah E. Shulman* |
| Roger B. Schagrin | Thomas M. Beline |
| Jeffrey D. Gerrish | Sarah E. Shulman |
| **SCHAGRIN ASSOCIATES** | **CASSIDY LEVY KENT (USA) LLP** |
| 900 Seventh Street, NW, Suite 500 | 900 19th Street, NW |
| Washington, DC 20001 | Washington, DC 20006 |
| (202) 223-1700 | (202) 567-2316 |
| *Counsel to Steel Dynamics, Inc. and* | *Counsel to United States Steel Corporation* |
| *California Steel Industries, Inc.* | |

March 30, 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE**

|  |  |  |
|---|---|---|
| _____ | ) | |
| PROSPERITY TIEH ENTERPRISE CO., | ) | |
| LTD., and YIEH PHUI ENTERPRISE CO., | ) | |
| LTD., | ) | |
|  | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
|  | ) | |
| UNITED STATES, | ) | Consol. Court No. 16-00138 |
|  | ) | |
| Defendant, | ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| CLEVELAND-CLIFFS STEEL | ) | |
| CORPORATION et al, | ) | |
|  | ) | |
| Defendant-Intervenors. | ) | |
| _____ | ) | |

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that these comments on the Final Results of

Redetermination Pursuant to Court Remand comply with the word-count limitation described in

the Court's Standard Chambers Procedures.  The comments contain 5,172 words according to

the word count function of the word processing software used to prepare the memorandum.

Respectfully submitted,

*/s/ Daniel L. Schneiderman*
Daniel L. Schneiderman
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4706
(202) 661-7847