## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| PROSPERITY TIEH ENTERPRISE CO., LTD., | ) |
| Plaintiff, | ) |
| and | ) |
| YIEH PHUI ENTERPRISE CO., LTD., | ) |
| Consolidated Plaintiff, | ) |
| v. | ) Consol. Court No. 16-00138 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| CLEVELAND-CLIFFS STEEL CORPORATION, CLEVELAND-CLIFFS STEEL LLC, NUCOR CORP., STEEL DYNAMICS, INC., CALIFORNIA STEEL INDUSTRIES, INC., and UNITED STATES STEEL CORP., | ) |
| Defendant-Intervenors. | ) |

### ORDER

Upon consideration of plaintiff's, consolidated plaintiff's and defendant-intervenors' comments regarding the Department of Commerce's Final Results of Redetermination Pursuant to Court Remand (February 14, 2022), ECF No. 156, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's remand redetermination is sustained in all respects; and it is further

ORDERED that judgment will enter in favor of the United States.


Dated: _____, 2022          _____

      New York, New York                              SENIOR JUDGE

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE**

|  |  |  |
|---|---|---|
| PROSPERITY TIEH ENTERPRISE CO., LTD., | ) | |
| Plaintiff, | ) | |
| and | ) | |
| YIEH PHUI ENTERPRISE CO., LTD., | ) | |
| Plaintiff, | ) | |
| v. | ) | Consol. Court No. 16-00138 |
| UNITED STATES, | ) | **PUBLIC VERSION** |
| Defendant, | ) | Business Proprietary Information Removed from Page 18 |
| and | ) | |
| CLEVELAND-CLIFFS STEEL CORPORATION, CLEVELAND-CLIFFS STEEL LLC, NUCOR CORP., STEEL DYNAMICS, INC., CALIFORNIA STEEL INDUSTRIES, INC., and UNITED STATES STEEL CORP., | ) | |
| Defendant-Intervenors. | ) | |

---

### DEFENDANT'S RESPONSE TO DEFENDANT-INTERVENORS' COMMENTS ON REMAND RESULTS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Assistant Director

OF COUNSEL:
LESLIE M. LEWIS
Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

ELIZABETH A. SPECK
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0369
E-mail: elizabeth.speck@usdoj.gov

May 6, 2022

*Attorneys for Defendant United States*

## **TABLE OF CONTENTS**

FACTUAL BACKGROUND ..................................................................................... 2

I.     Underlying Investigation, This Court's Remand In *Prosperity I*, And Commerce's First Remand Redetermination ..................................................................... 2

II.    This Court's Decision In *Prosperity II*, The Federal Circuit's Remand In *Prosperity III*, And This Court's Remand Order ......................................... 3

III.   Commerce's Second Remand Results ...................................................... 4

ARGUMENT ..................................................................................................... 5

I.     Standard Of Review ............................................................................ 6

II.    Commerce's Determination Not To Collapse Prosperity From The Yieh Phui/Synn Entity Is Supported By Substantial Evidence And In Accordance With Law ........... 7

    A.  Legal Framework ...................................................................... 7

    B.  Substantial Evidence Supports Commerce's Determination Not To Continue To Collapse Prosperity From The Yieh Phui/Synn Entity .................................. 9

    C.  Commerce Appropriately Considered Prosperity's Post-Investigation Period Divestment Of Synn In Determining Whether There Is A Significant Potential For Manipulation As Between Prosperity And Yieh Phui ................................. 13

    D.  Commerce Appropriately Analyzed Whether There Is A Significant Potential For Manipulation With Regard To The Lin Family Because The Record Lacked Evidence Of An Intact Family Grouping .................................... 17

III.   Commerce's Determination To Use Synn's Information In Calculating The Margin For The Yieh/Synn Entity And Not Prosperity Is Supported By Substantial Evidence And In Accordance With Law .................................... 21

    A.  Substantial Evidence Supports Commerce's Determination To Calculate One Margin For The Yieh Phui/Synn Entity Including Synn's Information And Another Margin For Prosperity .......................................................... 21

    B.  Substantial Evidence Supports Commerce's Use Of Synn's Information In Calculating The Margin For The Yieh/Synn Entity ................................. 23

CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Beijing Tianhai Indus. Co. v. United States,*
    234 F. Supp. 3d 1322 (Ct. Int'l Trade 2017)............................................................................ 16

*Consolidated Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ............................................................................................................... 6

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ............................................................................................................... 6

*Echjay Forgings v. United States,*
    475 F. Supp. 3d 1350 (Ct. Int'l Trade 2020)............................................................. 19, 20, 21

*Ferro-Union v. United States,*
    44 F. Supp. 2d 1310 (Ct. Int'l Trade 1999)............................................................................ 19

*I.D.I Int'l Dev. & Inv. Corp. v. United States,*
    No. 20-00107, 2021 Ct. Int'l Trade LEXIS 91 (Ct. Int'l Trade July 6, 2021) ......................... 17

*I.N.S. v. Elias-Zacarias,*
    502 U.S. 478 (1992) ............................................................................................................... 7

*Koeing & Bauer-Albert Ag v. United States,*
    90 F. Supp. 2d 1284 (Ct. Int'l Trade 2000)........................................................................ 7, 8

*Koyo Seiko Co. v. United States,*
    516 F. Supp. 2d 1323 (Ct. Int'l Trade 2007)................................................................... 12, 19

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015)............................................................................ 6

*Nobel Biocare Servs. AG v. Instradent USA, Inc.,*
    903 F.3d 1365 (Fed. Cir. 2018) ............................................................................................. 16

*Prosperity Tieh Enter. Co., v. United States,*
    532 F. Supp. 3d 1401 (Ct. Int'l Trade 2021).................................................................... passim

*Prosperity Tieh Enter. Co., v. United States,*
    965 F.3d 1320 (Fed. Cir. 2020) ...................................................................................... passim

*Prosperity Tieh Enter. Co. v. United States*,
     358 F. Supp. 3d 1363 (Ct. Int'l Trade 2018) .......................................................... 3, 4

*Prosperity Tieh Enter. Co. v. United States*,
     284 F. Supp. 3d 1364 (Ct. Int'l Trade 2018) ...................................................... 2, 3, 4

*Prosperity Tieh Enter. Co., Ltd. and Yieh Phui Enter. Co., Ltd. v. United States Court No. 16-
     00138, Slip Op. 21-113: Draft Results of Redetermination Pursuant to Court Remand* (Nov.
     24, 2021) ...................................................................................................................... 4

*Queen's Flowers de Colombia v. United States*,
     981 F. Supp. 617 (Ct. Int'l Trade 1997) ................................................................. 24

*United States Steel Corp. v. United States*,
     179 F. Supp. 3d 1114 (Ct. Int'l Trade 2016) ............................................................ 9

*Zhaoqing New Zhongya Aluminum Co. v. United States*,
     70 F. Supp. 3d 1298 (Ct. Int'l Trade 2015) ............................................................. 9

**Statutes**

19 U.S.C. § 1516a(b) ............................................................................................................ 6

19 U.S.C. § 1677(33)(A) ..................................................................................................... 18

19 U.S.C. § 1677(33)(A)-(G) ............................................................................................... 8

**Regulations**

19 C.F.R. § 351.401 ............................................................................................................ 18

19 C.F.R. § 351.401(f) .................................................................................................. *passim*

**Federal Registar**

*Antidumping Duties; Countervailing Duties*,
     62 Fed. Red. 27,296, 27,345 (Dep't of Commerce May 19, 1997) ................................. 8, 9, 16

*Certain Corrosion-Resistant Steel Products From Taiwan: Final Determination of Sales at Less
     Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*,
     81 Fed. Reg. 35,313 (Dep't of Commerce June 2, 2016) (affirm. final LTFV deter.) .......... 2, 3

*Certain Corrosion-Resistant Steel Products From Taiwan: Negative Preliminary Determination of Sales at Less Than Fair Value,*
   81 Fed. Reg. 72 (Dep't of Commerce Jan. 4, 2016) (negative prelim. LTFV deter.).................. 2

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| PROSPERITY TIEH ENTERPRISE CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| ) | |
| YIEH PHUI ENTERPRISE CO., LTD., ) | |
| ) | |
| Consolidated Plaintiff, ) | |
| ) | |
| v. ) | Consol. Court No. 16-00138 |
| ) | |
| UNITED STATES, ) | **PUBLIC** |
| ) | **VERSION** |
| Defendant, ) | |
| ) | Business |
| and ) | Proprietary Information |
| ) | Removed from Page 18 |
| CLEVELAND-CLIFFS STEEL CORPORATION, ) | |
| CLEVELAND-CLIFFS STEEL LLC, NUCOR CORP., ) | |
| STEEL DYNAMICS, INC., CALIFORNIA STEEL ) | |
| INDUSTRIES, INC., and UNITED STATES STEEL ) | |
| CORP., ) | |
| ) | |
| Defendant-Intervenors. ) | |
| ) | |

### DEFENDANT'S RESPONSE TO DEFENDANT-INTERVENORS' COMMENTS ON REMAND RESULTS

Defendant, the United States, respectfully responds to the comments of defendant-

intervenors Cleveland-Cliffs Steel Corporation, Cleveland-Cliffs Steel LLC, Nucor Corp., Steel

Dynamics, Inc., California Steel Industries, Inc., and United States Steel Corporation

(collectively, defendant-intervenors),[1] regarding the second remand results filed by the

Department of Commerce (Commerce).  *See* Final Results of Redetermination Pursuant to Court

Remand (February 14, 2022), ECF. No. 156 (Second Remand Results).

As discussed below, we respectfully request that the Court sustain the Second Remand

Results and enter judgment for the United States because Commerce has complied fully with this

Court's remand order in *Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui Enterprise Co., Ltd.*

*v. United States*, 532 F. Supp. 3d 1401 (Ct. Int'l Trade 2021) (Remand Order), ECF No. 135,[2]

and the Second Remand Results are supported by substantial evidence and in accordance with

law

## FACTUAL BACKGROUND

I.    **Underlying Investigation, This Court's Remand In *Prosperity I*, And Commerce's First Remand Redetermination**

In the underlying investigation, Commerce collapsed Yieh Phui and Synn in its

preliminary determination.  *See Certain Corrosion-Resistant Steel Products From Taiwan:*

*Negative Preliminary Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 72 (Dep't of

Commerce Jan. 4, 2016) (negative prelim. LTFV deter.) (*Preliminary Determination*), and

accompanying Preliminary Decision Memorandum (PDM) at 4.  Yieh Phui reported Synn's

calculation information without objection and no party challenged Commerce's preliminary

collapsing determination for Yieh Phui and Synn; thus, Commerce continued to collapse those

companies in the final determination.  *Certain Corrosion-Resistant Steel Products From Taiwan:*

---

[1] Plaintiff and Consolidated Plaintiff Prosperity Tieh Enterprise Co., Ltd. (Prosperity), and Yieh Phui Enterprise Co., Ltd. (Yieh Phui) support Commerce's Second Remand Results. *See* Prosperity Cmts. (March 30, 2022), ECF. No. 163 at 7; and Yieh Cmts. (March 30, 2022), ECF. No. 162 at 3.

[2] *See Prosperity Tieh Enter. Co., v. United States*, 965 F.3d 1320 (Fed. Cir. 2020) (*Prosperity III*), Federal Circuit Mandate in Appeal No. 19-1400 (September 8, 2020), ECF. No. 132.

*Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 81 Fed. Reg. 35,313 (Dep't of Commerce June 2, 2016) (affirm. final LTFV deter.) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM) at cmt 3.  In the *Final Determination*, Commerce further collapsed the Prosperity/Synn single-entity with the formerly collapsed Yieh Phui/Synn single-entity, which resulted in one, Prosperity/Yieh/Synn single-entity.  *Final Determination*, 81 Fed. Reg. at 35,314; IDM, P.R. 372 at 27-28; Final Collapsing Memo, June 2, 2016, C.R. 595, P.R. 379.[3]  Also, Commerce applied facts available with a partial adverse inference (AFA) to Prosperity because it found that Prosperity had misclassified yield strength for some of its home market and U.S. sales.  *Id*. at 12-19.

On January 23, 2018, this Court remanded Commerce's collapsing and partial AFA determinations.  *See Prosperity Tieh Enterprise Co. v. United States*, 284 F. Supp. 3d 1364 (Ct. Int'l Trade 2018) (*Prosperity I*).  On May 23, 2018, Commerce issued its First Remand Results in which Commerce continued to collapse Prosperity, Yieh Phui, and Synn into a single entity. *See* Final Results of Redetermination Pursuant to Court Remand, Consol. Court No. 19-00138, dated May 23, 2018 (First Remand Results), ECF No. 87.  Under respectful protest, Commerce revised the weighted-average dumping margin assigned to the Yieh/Prosperity/Synn single-entity by using Prosperity's reported yield strength data rather than resorting to partial AFA.  *Id*.

## II.     **This Court's Decision In *Prosperity II*, The Federal Circuit's Remand In *Prosperity III*, And This Court's Remand Order**

On December 20, 2018, this Court sustained Commerce's First Remand Results.  *See Prosperity Tieh Enter. Co. v. United States*, 358 F. Supp. 3d 1363, 1367, 1370 (Ct. Int'l Trade

---

[3] "P.R." refers to documents in the public record and "C.R." refers to documents in the confidential record.

2018) (*Prosperity II*).  Following the entry of judgment, Prosperity and Yieh Phui appealed this Court's decision in *Prosperity II* to the United States Court of Appeals for the Federal Circuit, and the defendant-intervenors filed a cross-appeal concerning this Court's ruling on Commerce's application of partial AFA in *Prosperity I*.   The Federal Circuit vacated this Court's judgment on both issues.  *See Prosperity III*, 965 F.3d at 1320.

On September 1, 2021, this Court issued its current remand order, ordering Commerce to reach a new determination on the appropriateness of collapsing, to reinstate the application of partial adverse facts available to Prosperity's yield strength reporting, and to re-determine margins consistent with *Prosperity III*.  *See* Remand Order, 532 F. Supp. 3d at 1408-09.

## III.   **Commerce's Second Remand Results**

On November 24, 2021, Commerce released the draft results of its second remand redetermination, and the parties filed comments in response to the draft results.  *See Prosperity Tieh Enterprise Co., Ltd. and Yieh Phui Enterprise Co., Ltd. v. United States Court No. 16-00138, Slip Op. 21-113: Draft Results of Redetermination Pursuant to Court Remand*, released on Nov. 24, 2021 (Draft Results).  On February 14, 2022, Commerce filed its Second Remand Results.  *See* Second Remand Results; *see also* ECF No. 156.  Consistent with the Court's Remand Order, Commerce (1) reconsidered its determination to collapse Prosperity with the Yieh Phui/Synn single-entity upon further consideration of the record with respect to the relationship between Prosperity and Yieh Phui, determining that the record does not support the collapsing of Prosperity with the Yieh Phui/Synn entity and, as a result, recalculated the margins for Prosperity and the Yieh Phui/Synn entity; and (2) reinstated partial AFA to Prosperity Tieh's misreported yield strength data for Prosperity's margin calculation.  Commerce calculated an 11.04 percent weighted-average dumping margin for Prosperity, and a 1.20 (*de minimis*) weighted-average dumping margin for the Yieh Phui/Synn entity which, if sustained by this

Court, will result in the exclusion from the antidumping duty order entries of subject

merchandise produced and exported by the Yieh Phui/Synn entity.

## ARGUMENT

Commerce's Second Remand Results are supported by substantial evidence and in

accordance with law.  Commerce's reinstatement of its original determination to apply partial

AFA with respect to Prosperity's misreported yield strength data in re-determining Prosperity's

dumping margin is consistent with the Court's Remand Order and is uncontested.  *See* Remand

Order, 532 F. Supp. 3d at 1408; *see also Prosperity III*, 965 F.3d at 1328.

Thus, the remaining issue is Commerce's collapsing determination.  Commerce

determined on remand not to collapse Prosperity with the Yieh/Synn entity because it found that

the record lacks sufficient support to satisfy the collapsing factors between Prosperity and Yieh

Phui, and that Yieh Phui holds a clear edge over Prosperity with respect to with which parent

company Synn's information should be used to recalculate the antidumping margins.

Defendant-intervenors argue that Commerce erred in its determination because

Commerce purportedly erroneously considered Prosperity's post-period of investigation (POI)

divestment of Synn and failed to appropriately analyze the record with respect to the Lin family.

But Commerce appropriately analyzed the record to determine whether the Lin family constitutes

a "person" or intact family grouping for collapsing purposes.  Commerce concluded that the

record lacked any evidence supporting common ownership, board or managerial overlap, or

intertwined operations during the POI.  And Commerce properly considered evidence that

Prosperity had divested its ownership of Synn shortly after the POI – a circumstance relevant to

the question of whether there is a significant potential of manipulation between Yieh Phui and

Prosperity by their joint ownership of Synn – as part of its analysis based on the totality of the

circumstances.  Further, the record shows that the two companies had minimal involvement during the POI.  Ultimately, Commerce reasonably determined not to continue to collapse Prosperity and Yieh Phui because the collapsing factors were not satisfied.

Defendant-intervenors' contention that Commerce should have collapsed Prosperity with Synn, rather than Yieh Phui with Synn is baseless because the question of with which parent company *Synn* can be collapsed is not at issue.  Nor can Commerce use Synn's information in the calculation of two separate margins.  Accordingly, Commerce's determination that Prosperity and Yieh Phui cannot be collapsed required removal of one of Synn's parent companies from single-entity treatment.  Thus, Commerce's determination to continue to collapse Yieh Phui with Synn and use Synn's information in the calculation of the Yieh Phui/Synn entity is supported by substantial evidence and in accordance with law.

## I.   <u>Standard Of Review</u>

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law."  *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).  Instead, when, as here, Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, Commerce's conclusions may be set aside only if the record contains evidence "so compelling

6

that no reasonable factfinder" could reach the same conclusion.  *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

## II.     Commerce's Determination Not To Collapse Prosperity With The Yieh Phui/Synn Entity Is Supported By Substantial Evidence And In Accordance With Law

In the Second Remand Results, Commerce not to continue to collapse Prosperity with the Yieh Phui/Synn entity based on its conclusion that the record does not provide sufficient information to satisfy the collapsing factors as between Prosperity and Yieh Phui.  *See* Second Remand Results at 23-33, 34-37.  Specifically, Commerce found that, as between Prosperity and Yieh Phui, the record lacks evidence to support a significant potential for manipulation of price or production based on the totality of circumstances and Commerce's findings of no common ownership, no board or managerial overlap, and no intertwined operations during the POI.  *Id.* That Prosperity and Yieh Phui each had an ownership interest in Synn during the POI does not alter Commerce's conclusion because no record evidence indicates manipulation by the companies through Synn, and Prosperity divested itself of Synn following the POI, thus eliminating concern for potential future manipulation.  Further, the record does not support defendant-intervenors' theory that the Lin family operates as an intact family grouping capable of collective control that would otherwise satisfy the collapsing factors.

### A.     Legal Framework

"Collapsing" refers to a practice in antidumping proceedings by which Commerce "determines that affiliated companies should be regarded as one entity, and therefore calculates a single, weighted-average dumping margin to be assessed to the collapsed entity as a whole."  *See Koeing & Bauer-Albert Ag v. United States*, 90 F. Supp. 2d 1284, 1286 (Ct. Int'l Trade 2000) (citations omitted); *see also Prosperity III*, 965 F.3d at 1323.  The purpose of collapsing is to "prevent affiliated entities from circumventing antidumping duties by channel{ing} production

of subject merchandise through the affiliate with the lowest potential dumping margin." *Prosperity III*, 965 F.3d at 1323 (internal citations and quotations omitted).

The antidumping statute does not directly address collapsing, but the Federal Circuit has acknowledged that Commerce's authority to collapse arises from Commerce's responsibility to prevent circumvention of the antidumping law. *See Prosperity III*, 965 F.3d at 1323; *see also Koenig & Bauer-Albert*, 90 F. Supp. 2d at 1287-88 ("Commerce's collapsing practice is a permissible construction of the statute, and is thus in accordance with law."). Commerce's rules for collapsing determinations are contained in 19 C.F.R. § 351.401(f).

Three regulatory conditions must be satisfied for Commerce to collapse "two or more affiliated producers" into a "single entity." 19 C.F.R. § 351.401(f). First, the companies must be "affiliated," as defined by 19 U.S.C. § 1677(33)(A)-(G). *See id.* Collapsing, however, "requires a finding of more than mere affiliation." *See Antidumping Duties; Countervailing Duties*, 62 Fed. Red. 27,296, 27,345 (Dep't of Commerce May 19, 1997) (*Preamble*). Second, Commerce must evaluate whether the entities have production facilities for similar or identical products that would not require substantial retooling of either facility to restructure manufacturing priorities, and third, there must also be "a significant potential for the manipulation of price or production." *Id.*; *see also* 19 C.F.R. § 351.401(f)(1). Commerce "may consider" the following "non-exhaustive" list of factors in making this determination: (1) "{t}he level of common ownership;" (2) "{t}he extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm;" and (3) "{w}hether operations are intertwined," such as "through the sharing of sales information, involvement in production or pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers." 19 C.F.R. § 351.401(f)(2)(i)-(iii); *see also Preamble*, 62 Fed. Reg. at 27,346.

8

"Commerce need not find all of the factors in the regulation present to find a significant potential for manipulation of price or production." *See United States Steel Corp. v. United States*, 179 F. Supp. 3d 1114, 1139 (Ct. Int'l Trade 2016); *see also Preamble*, 62 Fed. Reg. at 27,346. Instead, "{t}hese factors are considered by Commerce in light of the totality of the circumstances," such that "no one factor is dispositive in determining whether to collapse the producers." *See Zhaoqing New Zhongya Aluminum Co. v. United States*, 70 F. Supp. 3d 1298, 1304 (Ct. Int'l Trade 2015) (internal citations and quotations omitted). Accordingly, collapsing determinations "are very much fact-specific in nature, requiring a case-by-case analysis, as reflected in {Commerce's} determinations in actual cases{.}" *Preamble*, 62 Fed. Reg. at 27,346.

In promulgating 19 C.F.R. § 351.401(f), Commerce emphasized that collapsing requires a "significant" potential for manipulation. Indeed, Commerce acknowledged that it is "neither the Department's current nor intended practice" to collapse "upon finding *any* potential for price manipulation" because doing so "would lead to collapsing in almost all circumstances in which the Department finds producers to be affiliated." *Id.* at 27,345 (emphasis added); *see also Prosperity III*, 965 F.3d 1323-24. Commerce considers "future manipulation" in its determination of whether there exists "a significant potential for the manipulation of price or production." *Id.* (internal quotations committed); *see also* 62 Fed. Reg. at 27,346 ("the Department must consider future manipulation. … a standard based on the potential for manipulation focuses on what may transpire in the future.").

**B.      Substantial Evidence Supports Commerce's Determination Not To Continue To Collapse Prosperity With  The Yieh Phui/Synn Entity**

This remand focuses on Commerce's determination to collapse Prosperity with the Yieh Phui/Synn entity.  *See* Second Remand Results at 8-9.  No litigant has challenged Commerce's determination that all three companies, Prosperity, Yieh Phui, and Synn, are affiliated.  *See* Second Remand Results at 8-9; Cleveland-Cliffs' Cmts at 3; Prosperity Cmts at 3-4; Yieh's Cmts at 2 (incorporating its rebuttal comments in administrative proceeding); *see also* First Remand Comment Reply at 7; IDM, P.R. 372 at 27-28; Final Collapsing Memo, C.R. 595.  It is undisputed that the companies had production facilities for similar products which did not require substantial retooling.  *See* Second Remand Results at 11; Cleveland-Cliffs' Cmts at 3; Prosperity Cmts at 3.  The Court's Remand Order requires Commerce to consider the third collapsing factor, that is, whether there is a significant potential for the manipulation of price or production as between Prosperity and Yieh based on the totality of circumstances.  *See* Second Remand Results at 11, 13; Cleveland-Cliffs' Cmts at 3.

Commerce's original collapsing analysis focused on Prosperity's and Yieh Phui's relationships with Synn to support its determination to collapse the two entities, Prosperity/Synn and Yieh Phui/Synn, into a single Prosperity/Yieh Phui/Synn entity.  *See* Second Remand Results at 9, 13.  But the Federal Circuit found Commerce's determination unlawful because Commerce had analyzed only the collapsing factors as between Prosperity and Synn and as between Yieh Phui and Synn, and thus, failed to analyze the relationship as between Prosperity and Yieh Phui or between Prosperity and the Yieh Phui/Synn entity.  *See Prosperity III*, 965 F.3d at 1327; Second Remand Results at 9, 31.  The Federal Circuit stated that "{b}y disregarding Prosperity's relationship with Yieh and Yieh/Synn, Commerce failed to consider the 'totality of circumstances' relevant to whether Prosperity, Yieh, and Synn present a 'significant potential for

10

the manipulation of price or production.'"  *Id*.  Based on *Prosperity III*, this Court ordered that

Commerce make a new collapsing determination, consistent with the Federal Circuit's two

options:  (i) to evaluate the specific ties between Prosperity, Yieh Phui, and Synn, and (ii) if

considering Yieh Phui and Synn to be the same entity, to examine the ties between Prosperity

and *both* parts of the Yieh/Synn entity.  Remand Order at 14.  Regardless, given that it had

already evaluated Prosperity and Synn, and Yieh Phui and Synn, Commerce was required to

evaluate the relationship between Prosperity and Yieh Phui.  *Id*.  And the Federal Circuit

"emphasized that collapsing requires a '*significant'* potential for manipulation of price or

production" and "disapprov{ed} of the Department's resort to collapsing in instances in which

the record evidence of such potential does not meet this more demanding standard."  *Prosperity*

*III*, 965 F.3d at 1323-24 (emphasis in original); Remand Order at 13-14.

On remand, Commerce found that the record did not demonstrate that "significant

potential for manipulation" exists between Yieh Phui and Prosperity.  Second Remand Results at

12.  Commerce analyzed the relationship between Prosperity and Yieh Phui and found that (1)

Prosperity and Yieh Phui do not share any significant common ownership, and there is no

overlap in their largest shareholders; (2) none of Prosperity's and Yieh Phui's managers and

directors serve as managers or directors of the other firm; and (3) the record does not reflect that

Prosperity's and Yieh Phui's operations are intertwined in any way.  *Id.*  (citing Prosperity's

Section A Initial Questionnaire Response (Prosperity's AQR), Sept. 11, 2015, C.R. 43-63, P.R.

121-22, at Exhs. A-4 and A-5; Yieh Phui's Section A Questionnaire Response (Yieh Phui AQR),

Sept. 11, 2015, C.R. 32-38, P.R. 114-118; Prosperity Tieh's Sales Verification Report, April 13,

2016, C.R. 568, P.R. 341 at 4-6; Yieh Phui Sales Verification Report, Apr. 14, 2016, C.R. 569,

P.R. 343 at 3-5).

Commerce explained that:

> {T}he remand directive requires analysis and a factual basis to support that there exists a significant potential for manipulation between Yieh {} and Prosperity (based on the totality of circumstances) to sustain collapsing of all three entities. After reconsideration and review of the record, we find that it lacks such information but, rather, reflects that the two firms had *minimal involvement* with one another independent of their interest in Synn during the POI.

Second Remand Results at 14 (emphasis added).

Commerce acknowledged that the record contains evidence which could support Commerce's finding of some "potential for manipulation of price or production" between Prosperity and Yieh Phui including familial connections and an informal agreement between the two companies which provides each with the ability to appoint one of Synn's three directors.  *Id.* at 12-13 (citing Prosperity's AQR, C.R. 43-63, at Exhs. A-4, A-5 and A-41; Yieh Phui's AQR, C.R. 32-38, at Exhs. A-4 and A-5; Prosperity's Sales Verification Report, C.R. 568, at 4-6).  But Commerce concluded that the familial connections did not reflect common family control by an intact family grouping indicating anything more than affiliation, and that an informal agreement between the largest shareholders of a company is not, in of itself, evidence of a significant potential for manipulation.  *Id.* at 13.

Commerce's practice, as affirmed by this Court, is to collapse in "relatively unusual situations, where the type and degree of relationship is so significant that {it finds} there is a strong possibility of price manipulation."  *Koyo Seiko Co. v. United States*, 516 F. Supp. 2d 1323, 1346-47 (Ct. Int'l Trade 2007) (internal quotations omitted).  Thus, Commerce reasonably found that the record of minimal involvement between Prosperity and Yieh Phui fails to demonstrate that the potential for manipulation of price or production is *significant*.  *Id.*; *see also* Remand Order, 532 F. Supp. 3d at 1407 (citing *Prosperity III*, 965 F.3d at 1323-24).  Also, Commerce reasonably concluded that "pursuant to the totality of circumstances analysis required

12

by the CIT, which now additionally considers that there is insufficient evidence to find a significant potential for manipulation between Prosperity and the Yieh Phui portion of the {Yieh Phui}/Synn entity, we determine that Prosperity should be un-collapsed from the {Yieh Phui}/Synn single entity."  Second Remand Results at 14.

Commerce's redetermination complies with the Court's Remand Order to "reach a new determination on whether collapsing is appropriate."  *See* Remand Order, 532 F. Supp. 3d at 1409.  And in its remand order, this Court acknowledged that collapsing of Yieh Phui with Synn was uncontested in this litigation.  *Id.*  Further, because no litigant challenged Commerce's determination to collapse Yieh Phui and Synn in the underlying administrative review, Commerce did not revisit its determination and continued to collapse the companies.  *See* Second Remand Results at 8-9.  Accordingly, Commerce provided the required analysis, finding that collapsing is not appropriate as between Prosperity and Yieh Phui based on the totality of circumstances.  *Id.* at 10, 14.

### C.   Commerce Appropriately Considered Prosperity's Post-Investigation Period Divestment Of Synn In Determining Whether There Is A Significant Potential For Manipulation As Between Prosperity And Yieh Phui

Defendant-intervenors contend that Commerce erred in considering events outside the POI "when finding no potential for manipulation."  *See* Cleveland-Cliffs' Cmts at 4.  To clarify, Commerce considered record evidence in evaluating the ties between Prosperity and Yieh Phui and determined that "there is an insufficient record basis to support a finding, based on the totality of the circumstances, that a significant potential for manipulation of price or production exists between Prosperity and the Yieh Phui portion of the YP/Synn entity."  Second Remand Results at 13; *see also id.* at 5-14.  Specifically, Commerce explained:

> First, Prosperity and Yieh Phui do not share any significant common ownership, and there is no overlap in their largest shareholders.  Second, none of Prosperity or Yieh Phui's managers and directors serve as managers or directors of the other

13

> firm.  Third, the record does not reflect that the operations of Prosperity and Yieh
> Phui are intertwined in any way; specifically, the firms do not share sales
> information, have no involvement in each other's production and pricing
> decisions, do not share facilities or employees, and had no significant transactions
> with each other.

*Id*. at 12.  Also, Commerce identified Prosperity's post-POI divestment of Synn in response to

defendant-intervenors' arguments which focused on how the companies could manipulate price

and production through their ownership of Synn.  *Id*. at 32-33; 33 n.182 (citing Prosperity's

Sales Verification Report, C.R. 568 at 6, and Sales Verification Exhibits, C.R. 417, C.R. 421,

C.R. 43 and Exhibits SVE-4 and SVE-8).  Having found no evidence of actual manipulation

between Prosperity and Yieh through Synn or pursuant to the enumerated regulatory factors,

defendant-intervenors' arguments rest on presumptions of what may transpire in the future.  *Id*.

Commerce articulated the relevant facts:

> The POI is April 1, 2014, through March 31, 2015.  The record shows that
> Prosperity's divestment of Synn became effective in December 2015.  We issued
> our final determinations in May 2016, when we made our collapsing
> determination with respect to Prosperity and Synn.

Second Remand Results at 32-33.  Considering the totality of circumstances, Commerce

explained that "{t}he fact that Prosperity divested its interest in Synn … prior to the imposition

of AD duties indicates that concerns regarding the potential for future manipulation are

unfounded."  *Id*. at 33.  Thus, Commerce reasonably refrained from finding a significant

potential for manipulation between Prosperity and Yieh Phui by way of their ownership interests

in Synn because the regulatory collapsing factors were not satisfied.  Additionally, the relevant,

undisputed record evidence demonstrates that Prosperity no longer had an ownership interest in

Synn when Commerce issued its preliminary and final determinations.  *Id*.

Contrary to defendant-intervenors' claim that Commerce erroneously relied on

Prosperity's post-POI divestment, *see* Cleveland-Cliffs Cmts at 4, Commerce appropriately

14

analyzed relevant record evidence and found insufficient support for "a significant potential for manipulation" as between Prosperity and Yieh Phui based on the totality of the circumstances. *Id*. at 12.  As discussed above, Commerce found that the record did not support a showing of the enumerated regulatory factors.  *Id.* at 12.  Also, Commerce reasonably considered Prosperity's post-POI divestment a relevant consideration as to whether there is a "significant potential" that Prosperity and Yieh Phui could band together to manipulate price and production through their shared ownership of Synn.  Commerce's consideration of the post-POI circumstance is appropriate given the Court's statement in its Remand Order that "Commerce must consider the totality of the circumstances and the anticircumvention purpose of collapsing."  *See* Remand Order, 532 F. Supp. 3d at 1408-09; *see also* 62 Fed. Reg. at 27,346 ("the Department must consider future manipulation. … a standard based on the potential for manipulation focuses on what may transpire in the future.").

Further, Commerce concluded that the record lacks sufficient evidence to support "a significant potential for manipulation" between Prosperity and Yieh Phui based on the totality of the circumstances.  Second Remand Results at 13-14.  But Commerce did not find that there is "*no* potential" or "*no* possibility for manipulation" between Prosperity and Yieh Phui, as the defendant-intervenors incorrectly contend.  *See* Cleveland-Cliffs' Cmts at 4-9 (emphasis added).  As discussed above, Commerce acknowledged that the record contains information which could support some potential for manipulation between Prosperity and Yieh Phui but found that the evidence does not satisfy the more demanding standard that the potential be *significant*.  *See* Second Remand Results at 12-13; *see also* Remand Order, 532 F. Supp. 3d at 1407; *Prosperity III*, 965 F.3d at 1323-24; Prosperity Cmts at 4.  Absent analysis based solely on firms' relationships with Synn, Commerce reasonably found that the record does not support a

*significant* potential for manipulation between Prosperity and Yieh Phui.  Second Remand Results at 32; Prosperity Cmts at 4.

Defendant-intervenors cite administrative determinations to support their claim that Commerce departed from agency practice by considering Prosperity's post-POI divestment of Synn.  Cleveland-Cliffs' Cmts at 4.  But Commerce did not depart from the analyses in these determinations.  The determinations indicate that Commerce has, in the past, evaluated collapsing factors under 19 C.F.R. § 351.401(f) between companies being evaluated for collapsing based on POI circumstances.  *See* Cleveland-Cliffs' Cmts at 5 (citing cases).  Here, Commerce evaluated the collapsing factors between Prosperity and Yieh Phui based on POI circumstances, finding that the third collapsing criterion was not satisfied.  Second Remand Results at 12.  That Commerce also considered record evidence of Prosperity's post-POI divestment of a third company, Synn, does not alter, and, in fact, supports, Commerce's lawful analysis.

Regardless, the Federal Circuit instructed Commerce to "consider the 'totality of the circumstances' relevant to whether there is 'significant potential for manipulation of price or production.'" *Prosperity III*, 965 F.3d at 1328.  "{A}n analysis of the 'totality of the circumstances' requires an 'evaluation of all pertinent evidence.'"  *Id*. at 1327 (citing *Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1378 (Fed. Cir. 2018)).  Commerce has explained that collapsing determinations "are very much fact-specific in nature, requiring a case-by-case analysis{.}"  *Preamble*, 62 Fed. Reg. at 27,346.  Record information that a particular circumvention threat has been eliminated constitutes pertinent evidence as to whether there is a significant potential for manipulation.  Thus, even assuming Commerce departed from established agency practice in considering the post-POI circumstance, which it did not,

16

Commerce must base its determination considering the totality of fact- and case-specific circumstances.

Finally, defendant-intervenors' claims regarding the law of the case and judicial estoppel doctrines also fail. *See* Cleveland-Cliffs Cmts at 8-9. These doctrines generally apply to issues that have already been addressed by the Court. *See Beijing Tianhai Indus. Co. v. United States*, 234 F. Supp. 3d 1322, 1330 (Ct. Int'l Trade 2017) (stating that once a court has decided a rule of law "that decision should continue to govern the same issues in subsequent stages {of} the {} case"); *I.D.I Int'l Dev. & Inv. Corp. v. United States*, No. 20-00107, 2021 Ct. Int'l Trade LEXIS 91 (Ct. Int'l Trade July 6, 2021) (stating that a party is judicially estopped from taking a contrary position in a subsequent proceeding when it successfully urges a particular position in a prior legal proceeding). The sole remaining issue in this dispute is Commerce's collapsing determination for Prosperity and the Yieh Phui component of the Yieh/Synn entity that it made in its second remand redetermination. *See Prosperity III*, 965 F.3d at 1327; *see also* Second Remand Results. This second remand is the first time Commerce has made a collapsing determination considering record evidence to evaluate the relationship between Prosperity and Yieh Phui, and the first time Commerce has provided responses to parties' arguments pertaining to its determination. Also, it is the first time this Court will have the occasion to address Commerce's collapsing determination with respect to Prosperity and Yieh Phui. As stated above, Commerce's collapsing determinations are fact-specific in nature, requiring a case-by-case analysis. Thus, the defense of judicial estoppel is unavailable. Also, to the extent that Commerce previously declined to consider Prosperity's post-POI divestment of Synn, it did so in the context of collapsing Prosperity and Synn. *See* Final Collapsing Memo, C.R. 595 at 6-7; First Remand Results at 17. Accordingly, neither the law of the case nor the judicial estoppel

17

doctrine applies because the Court has never addressed the highly fact- and case-specific analysis Commerce has now, for the first time, put forth, consistent with the Court's Remand Order.

> **D. Commerce Appropriately Analyzed Whether There Is A Significant Potential For Manipulation With Regard To The Lin Family Because The Record Lacked Evidence Of An Intact Family Grouping**

Defendant-intervenors contend that Commerce erred in analyzing the potential for manipulation solely by reference to ownership and control by individual Lin family members, rather than by the Lin family in the aggregate.  Cleveland-Cliffs Cmts at 9.  But Commerce appropriately analyzed the collapsing criterion and found that record evidence supports affiliation by familial relationship but not common family control by an intact family grouping. Second Remand Results at 23, 25-26 (citing Final Collapsing Memo, C.R. 595 at 4 (citing Prosperity's AQR, C.R. 43-63 at 14 n.9); Prosperity's Second Supplemental Section A-C Response, Dec. 8, 2015, C.R. 343-348, P.R. 244-245 at 10; Yieh Phui's AQR, C.R. 32-38 at 6 and Exhs 5-6).

First, as explained above, a determination to collapse affiliated entities requires more than a finding of affiliation.  *See* Second Remand Results at 24-25 (citing Prosperity's Second Supplemental Section A-C Response, C.R. 343-348, at 10; Yieh Phui's AQR, C.R. 32-38 at 6 and Exhs 5-6).  The record supports that [          ] serve as board chairmen for Prosperity and Yieh Phui, and that persons within the companies share the same surname.  Second Remand Results at 24.  Although the familial connection provides a basis for Commerce's affiliation finding under 19 U.S.C. § 1677(33)(A), it is, by itself, "insufficient for Commerce to find that the Lin family grouping, such that one exists, constitutes a 'person' … for collapsing purposes under 19 C.F.R. § 351.401."  Second Remand Results at 24.

18

Defendant-intervenors' argument for collapsing Prosperity and Yieh Phui is premised on the theory that the Lin family members represent the Lin family grouping. But they point to no record evidence that the Lin family operates as a collective unit such that Commerce should consider it in the aggregate. *See, e.g.*, Second Remand Results at 25-28 (analyzing record evidence and citing Yieh Phui's AQR, C.R. 32-38 at Exh. 4, Yieh Phui's Sec. A-C Supp. Response, Nov. 25, 2015, C.R. 223-232, P.R. 216-217 at 4; Prosperity's AQR, C.R. 43-63 at Exhs. A-4 through A-7; Prosperity's Sales Verification Report, C.R. 568 at 4-5). Commerce considered familial relationships in its collapsing analysis but found that the record lacks support that the Lin family is a "person" for collapsing purposes. In the Second Remand Results, Commerce also explained that it "cannot base its conclusion that a family grouping constitutes a 'person' on the mere fact that persons involved in the businesses are family members with the same surname—there must be more to show a common interest or that the grouping consists of relationships that could impact business decisions of family-owned companies." *Id*. at 25 (citing *Echjay Forgings v. United States*, 475 F. Supp. 3d 1350 (Ct. Int'l Trade 2020) (*Echjay*) (citing *Ferro-Union v. United States*, 44 F. Supp. 2d 1310, 1325-26 (Ct. Int'l Trade 1999)).

Defendant-intervenors assert that "nothing precludes" Commerce from considering that members of the family unit sit on the boards of the companies to demonstrate a potential for manipulation. Cleveland-Cliffs Cmts at 11. As discussed above, however, collapsing requires a *significant* potential for manipulation. 19 C.F.R. § 351.401(f)(2). Indeed, this Court has affirmed Commerce's practice of collapsing in "relatively unusual situations, where the type and degree of relationship is so significant the {it finds} there is a strong possibility of price manipulation." *Koyo Seiko*, 516 F. Supp. 2d at 1346. In the case of family groupings, this Court has also said that even though a family grouping in the aggregate owns a majority of the family

19

businesses, a conclusion of a significant potential for manipulation of price or production requires a showing that the family unit is an intact family grouping.  *Id*. at 25-26 (citing *Echjay*, 475 F. Supp. 3d at 1374).  Defendant-intervenors fail to address this point or the fact that the record is devoid of evidence that the Lin family grouping is intact.  *Id*. at 26-27.

Defendant-intervenors contend that Commerce erroneously analyzed intact family grouping based on overlap the same family members.  Cleveland-Cliffs Cmts at 12.  But Commerce made its finding that the businesses are owned and controlled by two distinct and separate Lin family lines based on Commerce's analysis of record evidence for family and company interactions.  *Id*. at 26-27 (acknowledging that Commerce must address evidence of family and company interactions and the nature of family relationships to find a family grouping constitutes a "person") (citing *Echjay*, 475 F. Supp. 3d at 1374)).  As Commerce explained:

> Lin family members involved in the ownership, board or management of Prosperity and its affiliates are all direct family relations … of Mr. Kao-Huang Lin, and that the Lin family members involved in the ownership, board or management of Yieh Phui are all direct family relations of Mr. Lin, I Shou. … None of the family members of either of the two Lin family groups operates or manages businesses that are owned or controlled by the other Lin family group.

…

> Commerce's findings at verification further support that the Yieh Phui and Prosperity components of the Lin family group in this case are not intertwined, specifically finding that: (1) Prosperity and Yieh Phui do not share sales information …; (2) they have no involvement in each other's production and pricing decisions; (3) they do not share facilities or employees; and (4) they had no significant transactions with each other.

*Id*. at 26-27 (citing Yieh Phui's AQR, C.R. 32-38 at Exh. 4, Yieh Phui's Sec. A-C Supp. Response, Nov. 25, 2015, C.R. 223-232, P.R. 216-217 at 4; Prosperity's AQR, C.R. 43-63 at Exhs. A-4 through A-7; Prosperity's Sales Verification Report, C.R. 568 at 4-5).  Commerce further explained that information at verification indicates that Prosperity and Yieh Phui are competitors in the domestic and export markets; do not have any overlapping (or intertwined)

business operations; have very little personal or professional interaction among family members from each company; and do not have price, customer or market segment agreements. Second Remand Results at 27. Accordingly, Commerce found that the record demonstrates "divided family ownership between two distinct Lin family lines and separate control of businesses" and that the lines do not operate collectively, as a cohesive unit with a common interest or consisting of relationship could impact business decisions. *Id*. 27-28 (concluding that that the record lacks sufficient evidence that the Lin family is an intact family grouping). Also, Commerce found that the record lacks support for an affirmative determination under the regulatory factors enumerated in 19 C.F.R. § 351.401(f)(2)(i)-(iii). *Id*. at 28-31. Based on this analysis, Commerce reasonably concluded that the record contains insufficient evidence to support a significant potential for manipulation of price or production as between Prosperity and Yieh. *Id*. at 26-27; *see also Echjay*, 475 F. Supp. 3d at 1374.

III.   **Commerce's Determination To Use Synn's Information In Calculating The Margin For The Yieh/Synn Entity And Not Prosperity Is Supported By Substantial Evidence And In Accordance With Law**

In the Second Remand Results, Commerce determined to continue to collapse Synn with Yieh and use Synn's information in calculating the margin for the Yieh/Synn entity. *See* Second Remand Results at 23-33, 34-37. Commerce's determination is supported by substantial evidence and complies with the Court's Remand Order.

A.   **Substantial Evidence Supports Commerce's Determination To Calculate One Margin For The Yieh Phui/Synn Entity Including Synn's Information And Another Margin For Prosperity**

In the Second Remand Results, Commerce acknowledged that the Federal Circuit's remand left undisturbed its prior collapsing determinations with respect to Prosperity and Synn, and Yieh Phui and Synn, but also required that Commerce analyze the collapsing criteria with

respect to Prosperity and both components of the Yieh Phui/Synn single entity.  Second Remand Results at 10.  But Commerce could not calculate both a Prosperity/Synn and Yieh Phui/Synn margin because to do would effectively attribute Synn's POI actions to two distinct respondent entities, resulting in the counting of Synn's cost and home market sales twice, and render two different antidumping margins for Synn.  *Id*.  As a result, Commerce determined to continue to collapse Synn and Yieh Phui and use Synn's information in calculating the Yieh/Synn entity because Commerce's collapsing of Yieh Phui and Synn was uncontested throughout the underlying review and litigation, unlike Commerce's collapsing of Prosperity and Synn.  Second Remand Results at 34-35.  Further, Commerce found that Yieh Phui holds a clear edge over Prosperity with respect to the parent company with which Synn's information should be used to calculate a margin.  *See id*. at 35-37.

Commerce explained that it made its original decision to collapse Synn and Yieh Phui at the preliminary stage of the investigation and respondent Yieh Phui reported without objection relevant margin calculation information regarding Synn's cost of production and home market sales.  *See* Second Remand Results at 34-35.  Commerce also considered that Yieh Phui is the largest single owner of Synn and that the record contains uncontroverted evidence of board and management overlap between the two companies in addition to operational intertwining.  *Id.* at 35.  Conversely, Commerce's determination to collapse Prosperity with Synn was made at the final stage of the investigation and was highly contested.  *Id.* at 34-35.  Further, Commerce considered that Prosperity was the second largest shareholder of Synn, behind Yieh Phui, and with the exception of Prosperity's chairman serving on Synn's board, the record contains no other evidence of managerial or board overlap.  *Id*.  Acknowledging that record evidence also

supports Prosperity and Synn's intertwined operations (tolling arrangements and purchase and

sale agreements), Commerce explained that:

> {W}e find that the higher ownership stake in Synn maintained by Yieh Phui (as
> its largest individual owner), the significant ownership overlap and co-location of
> factory facilities, and in particular the record information which demonstrates that
> Prosperity divested its interest in Synn discussed above, support our
> determination … to include Synn's information in the calculation of the margin
> for {Yieh Phui}/Synn … {.}

*Id*. at 36-37.  Thus, Commerce reasonably included Synn's information in the margin calculation

of the Yieh Phui/Synn entity, rather than in the margin for Prosperity.

### B.   Substantial Evidence Supports Commerce's Use Of Synn's Information In Calculating The Margin For The Yieh/Synn Entity

Defendant-intervenors assert that Prosperity's post-POI divestment in Synn is the

"pivotal reason" that Commerce continues to treat Yieh Phui and Synn as a single-entity.

Cleveland-Cliffs' Cmts at 14.  Defendant-intervenors also argue that Commerce's decision to

collapse Synn with Yieh Phui rather than Prosperity is unsupported by substantial evidence

because Commerce found operational intertwining between Yieh Phui and Synn in error.  *Id*. at

15.  Commerce must consider the totality of circumstances to determine whether there is a

significant potential for manipulation between Prosperity and Yieh Phui.  Prosperity's post-POI

divestment of Synn is a circumstance within the totality of circumstances relevant to the

question.  Nor is Commerce required to find the presence of all three factors, including

operational intertwining, to find a significant potential for manipulation of price or production in

accordance with 19 C.F.R. § 351.401(f)(2).  But defendant-intervenors' arguments ignore that

the Federal Circuit's remand left undisturbed Commerce's collapsing determinations for

Prosperity and Synn and for Yieh Phui and Synn; and that Commerce maintained these

collapsing determinations.  Second Remand Results at 10.

Because the parent companies could not be collapsed based on Commerce's new collapsing determination and the fact that Commerce cannot calculate both a Yieh Phui/Synn and Prosperity/Synn margin, Commerce's decision on remand was whether Synn's information should be used with Yieh Phui's or Prosperity's information to calculate the margins. The question is not whether there is a more significant potential for manipulation between Synn and Prosperity or Yieh Phui, requiring further analysis of the regulatory factors including intertwined operations pursuant to 19 C.F.R. § 351.401(f)(2)(iii) and circumstances as they existed during the POI. Instead, the question is with which of Synn's parent companies its information should be used to calculate its antidumping margin.

Commerce considered the entire record and found that Yieh Phui "holds a{sic} clear edge over Prosperity" with respect to with which parent Synn's information should be included. Second Remand Results at 36 (citing Preliminary Collapsing Memo, Dec. 21, 2015, C.R. at 382, P.R. 272 at 5; Final Collapsing Memo, C.R. 595 at 6-7). Commerce reasonably determined to include Synn in the margin calculation and resulting antidumping rate for Yieh and not for Prosperity, based on the record and consistent with the anti-circumvention purpose of the collapsing provision.

As discussed above, Commerce derives its collapsing authority from its responsibility to prevent duty circumvention, and collapsing is appropriate not in usual circumstances of affiliation, but when two or more affiliates should be regarded as one entity with a single rate to prevent those companies from working together to channel subject merchandise through the affiliate which received the lowest dumping margin. The courts have observed that the purpose of collapsing is "'to ensure that {Commerce} reviews the entire producer or reseller, not merely a part of it,'" *Queen's Flowers,* 981 F. Supp. at 622, and "to prevent affiliated entities from

circumventing antidumping duties by 'channel{ing} production of subject merchandise through the affiliate with the lowest potential dumping margin.'" *Prosperity III*, 965 F.3d at 1323 (internal citation omitted).

In the Second Remand Results, Commerce explained that the record reflects that Yieh Phui is the largest single owner of Synn and possesses board and management overlap. *Id*. at 35-36 (citing Preliminary Collapsing Memo, C.R. 382 at 5; Final Collapsing Memo, C.R. 595 at 6-7). Even if Commerce found operational intertwining between Yieh Phui and Synn in error, the record indicates that the two companies share co-located facilities and payments to shared managers. *Id*. at 35. Yieh Phui reported Synn's information without objection in the underlying review, whereas the collapsing of Prosperity with Synn was highly contested. Further, record evidence of Prosperity's post-POI divestment of Synn eliminated concerns of future circumvention through Prosperity's ownership or control of Synn. On this record basis considering the purpose of the collapsing, Commerce reasonably determined to use Synn's information with the margin calculation for Yieh Phui, rather than Prosperity.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Second Remand Results in their entirety and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

OF COUNSEL:                                      /s/ Elizabeth A. Speck
LESLIE M. LEWIS                                  ELIZABETH A. SPECK
Attorney                                         Trial Attorney
Office of the Chief Counsel                      U.S. Department of Justice
for Trade Enforcement and Compliance             Civil Division
U.S. Department of Commerce                       Commercial Litigation Branch
Washington, D.C.                                 P.O. Box 480
                                                 Ben Franklin Station
                                                 Washington, D.C. 20044
                                                 Telephone: (202) 307-0369
                                                 E-mail: elizabeth.speck@usdoj.gov

May 6, 2022                                       *Attorneys for Defendant United States*

*PUBLIC VERSION*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 7,256 words, including text, footnotes, and headings.

<u>/s Elizabeth Anne Speck</u>